MADISON  COUNTY  ET  AL.  *v.*  HOWARD.

[80 South. 524, Division B.]

1. EVIDENCE. *Judicial notice.*

The supreme court may take judicial notice of the well-known fact that in every county of the state there are two schools of thought upon mortgaging the future for the benefit of the present. One group insists upon the policy of pay as you go, while another group insists upon postponing the day of judgment, and so the legislature of 1918 said, in effect: "Let the people vote and give them a chance to express themselves at the ballot box."

2. HIGHWAYS. *Road districts as "taxing districts." Statutes.*

Under the Laws of 1918, chapter 209, section 2, providing that no interest-bearing debt shall be incurred in any county or other taxing district unless authorized by a majority of the electors voting in an election called for that purpose. A road district is a "taxing district" within the purview of such act.

APPEAL from the chancery court of Madison county. HON. LAMAR F. EASTERLING, Chancellor.

Suit by L. T. G. Howard against Madison County and others. Defendant's motion to dissolve injunction being overruled, defendants appeal.

The facts are fully stated in the opinion of the court.

*W. H. & R. H. Powell,* for appellants.

*Powell & Mayes,* for appellee.

*J. B. Harris, Amicus Curiae.*

COOK, P. J., delivered the opinion of the court.

The appellee filed a bill of complaint asking that the board of supervisors of Madison county be restrained from issuing fourteen thousand dollars, of road bonds.

The injunction was issued and the motion to dissolve was overruled, and the board of supervisors appeals to this court.

The motion to dissolve was heard by the judge of the chancery court upon an agreed statements of facts, which was as follows:

"It is agreed by all parties that the following are facts and may be read in evidence upon trial of this cause. At the November term of the board of supervisors of said county in the year 1915, twenty per cent. of the qualified electors of district No. 2 presented and filed their petition to be permitted to come under the provisions of chapter 176, Laws of 1914, of said state in accordance with the provisions of said chapter. That the board of supervisors of said county upon said petition published notice of its proposal to issue the bonds of said district as required by said act. That within that time at December term, 1915, twenty per cent. of the qualified electors of said district did petition against the issuance of said bonds and the bonds were not issued, and thereupon said board at its December term, 1915, ordered the election as provided by said acts, and that tickets were provided as provided by said act and used in said election, and had printed thereon, *inter alia,* "For issuance of bonds." "Against issuance of bonds." That said election was held and conducted on December 31, 1915, as required by law, and the election commissioners canvassed the returns thereof and certified the result to said board at their next regular meeting thereafter, which showed that said election was carried in favor of the issuance of bonds by a large majority. Said board received and approved said report of the said election commissioners, all of which has been duly spread upon the minutes of said board.

"There has never been any other election held in said district for or against issuance of any bonds. Said board appointed road commissioners for said district

as required by said act, which commissioners have met and organized in accordance with law. That said road commissioners did fix the amounts of bonds necessary to be issued at eighty thousand dollars, and thirteen thousand dollars in 1916, and fourteen thousand in 1918, all of which were approved by said board. All of the orders of said board mentioned in this agreed state of facts were duly entered upon its minutes. That said board at its January term, 1916, ordered the issuance of eighty thousand dollars of bonds, and at its May term, 1916, ordered the issuance of thirteen thousand dollars of road bonds, and at its August meeting, 1918, ordered the issuance of fourteen thousand dollars of bonds for said district under said law and said election held in 1915 aforesaid. The said first two issues were not enjoined, but the last is sought to be enjoined by the bill filed in this case. That the assessed value of all of the taxable property in said district 2 for the years 1915, 1916, 1917, and 1918 was and is the sums of nine hundred and thirty-one thousand, seven hundred and fourteen dollars and nine hundred and sixty-seven thousand and one hundred and twenty-seven dollars and one million two hundred and one thousand, three hundred and twelve dollars and one million, two hundred and forty-six thousand, nine hundred and thirty-nine dollars respectively. That upon said assessments for 1915 and 1916 only eighty thousand dollars and thirteen thousand dollars of such bonds could be issued, but upon said assessments of 1917 and 1918 an additional sum of fourteen thousand dollars of bonds could be issued, so as to bring it within ten per cent. of the assessed value for 1917 and 1918, if as a matter of law the issuance of fourteen thousand dollars of bonds can be made under the election held in 1915. That at the September term, 1918, twenty per cent. of the qualified electors of said district filed their petition for another election upon the issuance of said fourteen

thousand dollars of bonds, but said board has taken no action on said petition.''

It will be observed that when the electors voted for the issuance of bonds the assessed value of the property of the district was much less than it was at the time the board of supervisors ordered the issuance and sale of the second issue of bonds.

When the electors voted for the issuance of the bonds they thereby authorized the board of supervisors to issue bonds to the then existing limit—ten per cent. of the assessed value of the district. As we understand the record the first issue went to the limit. So the question for our decision is narrowed. If the first election limited the power to issue bonds to ten per cent. of the then assessed value of the property of the district, the power has been exhausted, and no more bonds may be issued under the election held in 1915.

This is the position of the appellee. The appellant insists that the election conferred upon the board of supervisors the power to issue more and more bonds, provided the total issue does not exceed the ten per cent. of the assessed value of the district at the time the bond issue is ordered.

Section 4 of the act provides that the bonds shall be lithographed, and shall be in sums of one hundred dollars or five hundred each, and shall be in a regular series from one upward; the law also provides that every bond issued shall specify on its face the purpose for which it was authorized to be issued, and the total amount to be issued. So when the bonds were authorized by a vote of the taxpayers, if the board of supervisors had at once prepared the lithographed bonds, the total amount which could then be issued would be necessarily limited to ten per cent. of the then assessed value of the property in the district.

The appellant insists that the elections held conferred upon the board of supervisors the power to issue bonds to an amount not in excess of ten per cent.

of the assessed value of the property of the district at the time the bonds are issued. It is insisted that the bonds already issued added to the bonds enjoined do not exceed ten per cent. of the assessed value of the property at this time.

It seems to us that to dispose of this appeal it is unnecessary to adopt either view of the Laws of 1914 submitted by the contending parties to their appeal. In fact, the members of the court are not in entire accord in their interpretation of the Laws of 1914.

Putting to one side the Laws of 1914, the court is convinced that chapter 209, Laws of 1918, is decisive. It is our belief that the legislature adopted the last-named statute to meet just such cases as this record presents. There are many drainage laws, and numerous laws providing ways and means for constructing and maintaining public roads. In late years many counties and districts have adopted ambitious schemes of public improvements, and nearly all of them provide for the borrowing of money and the flotation of interest-bearing bonds. The records of this court will show that bond issues have been opposed by the taxpayers in numerous instances, and the courts have been asked to restrain the issuance of bonds. So it was that the legislature adopted chapter 209, section 2, Laws of 1918, which reads:

"Sec. 2.   That no interest-bearing debt, except as provided in section 1 of this act shall be incurred in any county, municipality or other taxing district, unless authorized by a majority of the electors who shall vote in an election called for that purpose; but shall not prevent either a municipality of a county from borrowing money in anticipation of taxes, as now provided by law."

We think this court may take judicial notice of the well-known fact that in every county in this state there are two schools of thought upon mortgaging the future for the benefit of the present. One group insists upon

the policy of pay as you go, while another group insists upon postponing the day of judgment.

So the legislature of 1918 said, in effect: "Let the people vote and give them a chance to express their sentiments at the ballot box."

We are convinced that the road district is a "taxing district" in the sense of the statute.

*Affirmed.*