HEIDELBERG ET AL. *v.* BATSON MAYOR ET AL.

[81 South. 225, Division A.]

1. MUNICIPAL CORPORATIONS. *Bond issue. Necessity of vote. Interest bearing debt.*

Under Acts 1918, chapter 209, section 2, providing that "No interest bearing debt," except serial bonds to pay outstanding debts shall be issued, unless authorized by a majority of the electors, a municipal bond issue, not authorized by a majority of the electors is void since a bond is an "interest bearing debt" within the meaning of section 4 of said act.

2. CONSTITUTIONAL LAW. *Judicial functions. Policy of law.*

Courts are not concerned with the policy or wisdom of any legislative enactment, their duty lies only in construing and interpreting the legislative intent as they find it expressed in the particular law.

3. STATUTE. *Constitutional enactments.*

Section 61, Constitution 1890, providing that no law shall be revised or amended by reference to its title only and requiring amended sections to be inserted at length, is not violated by Acts 1918, chapter 209, relating to the contracting of interest-bearing debts by a county municipality or other taxing district even if held to amend prior acts.

4. STATUTE. *Sufficiency of title. Amendatory act.*

The title of Act 1918, chapter 209, relating to the contracting of interest bearing debts by a county, city or other taxing district, being sufficient, the act is not violative of section 71 of our Constitution, because it fails to refer in its title to section 3415, Code 1906, and other sections and chapters of the bond laws of the state.

APPEAL from the chancery court of Forest county.
HON. W. M. DENNY, JR., Chancellor.

Suit by S. L. Heidelberg and others against T. E.
Batson, Mayor and others. From a decree sustaining
defendant's demurrer, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*George Currie,* for appellant.

We respectfully submit that the demurrer should have
been overruled. The bill recites that the city of Hatties-
burg is operating under a commission form of govern-
ment, and that it undertook to issue and sell bonds in
the sum of twenty-five thousand dollars, for improve-
ments to the city hall, and to the sanitary system, and
for repairs, improvement, and extension of the water-
work system, without first holding an election for that
purpose. We contend that a city which elects to operate
under a commission form of government can in no event
issue bonds without first being authorized to do so, by a
majority of the qualified electors, who vote in an
election held for that purpose. Section 5 of chapter 147,
of the Laws of 1914, indicates that an election is requir-
ed in every such case. The section provides that: "The
municipalities operating under the commission govern-
ment laws are authorized to issue bonds for the fore-
going purposes by a majority vote, as provided in the
commission government laws, and the requirement of a
two-thirds majority shall not apply to such municipali-
ties." It will be observed that counties and other muni-
cipalities, not operating under a commission form of
government, could issue bonds for such purposes without
an election under this chapter and previous laws, provid-
ed that the total issue did exceed seven per cent of the
taxable assessment for the preceding year. However,
if the issue exceeded the limit prescribed by law, an
election was necessary and a two-thirds majority of
those voting was required. A city operating under the

commission form of government was required to obtain only a majority vote favoring bond issue before the issue could be made. We see no reason for these differences unless it was intended to require an election of such cities in every case. Unless this section bears this construction it appears to confer a special privilege on such cities without any apparent reason. We therefore submit that a favorable election is required in every such instance before a city operating under a commission form of government is authorized to issue bonds for any purpose.

We contend, however, that chapter 209 of the laws of 1918, makes the bonds in this case invalid and that it prohibits their issuance. The bill alleges and the demurrer admits that these bonds were sought to be issued without any reference to this statute.

The bonds are not serial as required by this statute, and no election was held as the appellees were proceeding upon the theory that the bonds need not be serial and that an election was unnecessary in view of the fact that the issue did not exceed seven per cent of the taxable valuation of the city for the preceding year as shown by the assessment roll. If chapter 209 of the Laws of 1918, applies, then the demurrer should have been overruled, because the bonds are not serial and because no election was held. We submit that section 2 of chapter 209 of the laws of 1918, does not apply and that it prevents the city of Hattiesburg from issuing these bonds. Section 1 of this chapter has reference to debts existing at the time of its enactment and it was construed by the court in the case of *Board of Supervisors of Madison County* v. *Bourgeois,* reported in Southern Reporter, volume 79, page 91, section 9 of the act is not in controversy here. The question for decision is whether the Act of 1918, sections 2 and 4 requires an election and whether it requires that the bonds be issued in series, the statute is plain and we see no room for construction or escape from the obvious provisions of

these sections. We submit that section 2 of chapter 209 of the Laws of 1918, was passed in order to prevent the accumulation of debts without the sanction of the people expressed in an election. We insist that all questions in regard to the meaning and application of this act, if there were any, have been settled by the opinion of this court in the case of *Madison County et al* v. *Howard,* reported in the Southern, volume 80, page 524. That opinion is conclusive of this appeal. In that case this court clearly stated the evils which this statute is intended to cure, and we can state our contentions in no clearer or stronger language than this court used in that opinion. This court said: "So the legislature was well aware of the fact that many counties and cities were accumulating debts and floating bond issues often improvidently. This court in the opinion cited took judicial notice of the well-known fact that there are two opposing factions in regard to tht accumulation of debt. We submit that the legislature intended in all cases to leave the question entirely in the hands of the people in order that they might be heard before any further bonds are issued. We submit that section 2 of chapter 209 of the Laws of 1918, requires an election before the city of Hattiesburg is authorized to issue these bonds, and that section 4, requires them to be issued serially. We insist also that the decision of this court in the Howard case leaves no question in regard to the necessity of these requirements. We therefore submit that the decree of the chancellor should be reversed.

*Sullivan & Sullivan,* for appellee.

An examination of the statutes will disclose that the word "debt" has a more restricted meaning that the word "bond." For instance, section 3430, Code 1906, among other things provides, "if the indebtedness of the municipality have been increased during the year, by contract or by ordinance participated in or voted

for by the mayor and aldermen, unless the increase be authorized by the electors as provided in this chapter, the mayor and aldermen shall be suspended from office and the governor shall appoint their successors who shall hold until the next election and qualification of officers thereunder. In case of an increase of indebtedness not so authorized the mayor and aldermen shall not succeed themselves or each other.

This is a plain prohibition against contracting debts in excess of the debts of the preceding year without the consent of the electors expressed in an election held for that purpose. Yet sections 3415, 3416 and other sections of Code 1906, and other laws enacted since the Code provided for bond issues for certain purposes and in certain limitations, without ordering an election and obtaining the consent of the electors, unless a protest is filed and an election called for or made necessary by the protest of a certain per cent of the electors.

If the debt referred to in section 3430, Code 1906, meant bonds, then there could not have been a bond issue without an election because section 3430 would have prohibited the creation of a bonded indebtedness unless authorized by an election. Such construction has never been put on the statute and such a broad meaning given the word "debt" in the practical application of the law. Before the adoption of chapter 209, Laws 1918, municipalities all over the state created debts evidenced by bond issues, which debts if added to the debt of the current year would have far exceeded the municipal debt created the preceding year. To illustrate this we will assume that the municipal debt of the city of Hattiesburg for the year 1916 contracted in conducting the municipal government was one hundred thousand dollars, and it was the same in the year 1917. That in the year 1917 the authorities gave notice of their intention to issue bonds in the sum of two hundred thousand dollars for a purpose authorized

by law, and no protest was filed, and the bonds were issued and sold.

If the word debt used in section 3430, Code 1906, meant bond debts, then the law was violated of course. All the law on this subject should be considered as a whole to get the meaning of the legislature, and when this is done, it will be found that the legislature did not intend by section 2, chapter 209, Laws 1918, to change the existing law on the issuance of bonds, section 3430, Code 1906 limiting the debts of a municipality when read with other sections of the Code providing for bond issues under certain restrictions, becomes limited and restricted, in its meaning and purpose and is found not to prohibit bond issues, or else the several sections would be in hopeless conflict.

The same is true of section 2, chapter 209, Laws 1918, when read in connection with chapter 147, Laws 1914, and others. Chapter 120, Laws 1912, beginning at page 107, provides for a commission form of government, and section 16 of this act provides that "every issue of the bonds of such city or the making or contracting of any interest bearing debt of such city, must be approved after the passage of an ordinance providing for, or granting the same, by a majority of the qualified electors of such city voting thereon at a general or special election. Here is a clear distinction between bonds and interest bearing debts.

Chapter 172, Laws 1918, p. 188, adopted March 28, 1918, the same day as chapter 209, Laws 1918, expressly provides that the board of supervisors is authorized to issue certain bonds on petition of a majority of the resident taxpayers, not by a majority of the qualified electors; section 2 of this chapter provides that the bonds shall be issued as provided in the chapter on municipalities.

The chapter on municipalities provides for notice of intention to issue bonds, and unless a protest is filed by twenty per cent. or more of the qualified

electors the bonds will be issued without an election up to seven per cent of assessed valuations. Or, if a sufficient protest is filed then an election must be held, etc., laws on the issuance of bonds.

In order to see how far reaching chapter 209, Laws 1918 is, we will refer to some of the statutes repealed or modified by it, if its prohibition applies to bonded indebtedness. Section 3419, Code 1906, providing for notice to taxpayers of the intention to issue bonds and the right to protest against the bond issue and call for an election would be repealed.

Section 2 of chapter 147, Laws 1914, requiring a two-thirds vote of the electors voting before bonds could be issued in excess of seven per cent of the assessed value of the taxable property would be repealed.

Chapter 139, Laws 1918, empowering cities of twenty thousand inhabitants or more to issue bonds for street purposes not exceeding five hundred thousand dollars would be repealed, and the right denied entirely because that chapter does not provide for holding an election.

Chapter 147, Laws 1916, on pages 204 and 205 of the Laws of 1916, would be repealed. This chapter provides that municipalities may borrow money or give notes or certificates of indebtedness to pay for the construction and laying of sidewalks and the paving of streets. Section 3 of this chapter expressly provides that it shall not be necessary to secure the approval of the qualified electors to borrow money provided for in the act, or to issue the notes or certificates or to renew the loan or to given new notes or certificates but the municipal authorities may do and perform all acts necessary without an election.

This chapter was adopted April 3, 1916. If chapter 209, Laws 1918, and especially section 2 thereof is to be given the broad and sweeping effect contended for, then chapter 147, Laws 1916, is totally repealed and the right to make special improvements on the streets and sidewalks is practically denied.

Chaper 139, Acts 1912, page 129, authorizing Municipalities to borrow money or give notes or certificates of indebtedness for street paving or laying of sidewalks would be repealed.

Chapter 208, Laws 1918, page 256, approved March 22, 1918, authorizing municipalities to borrow money for plumbing, etc., without an election would be repealed by chapter 209, Laws of 1918, adopted March 28, 1918.

Chapter 224, Laws of 1918, page 283, approved March 27, 1918, authorizing municipalities to borrow money or give notes to pay for the repairing of paved streets would be repealed for section 3 of the act expressly provides that it shall not be necessary to hold an election for this purpose. This act was adopted March 27, 1918, and chapter 209 was adopted March 28, 1918.

Many other statutes can be referred to along this line. Chapter 269, Laws 1914, in regard to the drainage districts would be repealed by such construction. This chapter provides for bond issues and certificates of indebtedness and the like and makes no provision for an election for that purpose. Section 15 of this chapter provides that the commissioners may borrow money and issue evidence of debt or serial bonds therefor but an election is not provided for. The power to issue the bonds is left with the commissioners. Section 2, chapter 209, Laws of 1918, either repeals the drainage law outright or changes the whole scheme of it by compelling an election on the bond issue.

The case of *Madison County* v. *Howard,* 80 So. 524, recently decided, seems to hold that bond issues without an election are prohibited by chapter 209, Laws 1918, but the facts in this case show that the point was not raised by the pleadings, and evidently was not argued by the attorneys. We also advised that no suggestion of error was filed and consequently the court has never heard any argument on the question. In a matter of such great importance we respectfully

submit that if the case above referred to is considered to hold that chapter 209, Laws of 1918, controls bond issues as well as other debts, then the case should be reconsidered and overruled.

If the legislature meant to prohibit bond issues without first holding elections, why did it not say so? Why did it not use the word "bonds" and make its meaning plain? Section 16, chapter 120, Laws of 1912, requires every bond issue to be voted on, but that chapter provides for a commission government and only applies to municipalities which have elected to come under it. Hattiesburg is not under that chapter. Repeals of statutes by implication are not favored. See following: *White* v. *Johnson,* 23 J. 68 (1873); *Pons* v. *State* 49 Miss. 1; See, also, (1886) *Swann* v. *Buck,* 40 N. 268 (1896); *Campbell* v. *New Orleans Nat. Bank,* 74 Miss 526, 21 So. 400 (1908); *Pattison* v. *Clingham,* 93 Miss. 310, 47 So. 503. The intention of repealing an existing law by implication must clearly appear in the supposed repealing act. *Campbell* v. *New Orleans Nat. Bank,* 74 Miss. 526. Where statutes are seemingly in conflict, the courts will, if possible, adopt such construction as will give effect to both. *Smith* v. *Vicksburg,* 54 Miss. 615.

Particular or special statutes are not repealed by general statutes. We submit that chapter 209, Laws 1918, does not apply to the city of Hattiesburg, even though it should be construed to prohibit the issuance of bonds unless authorized by election. The city of Hattiesburg is operating under chapter 108, Laws of 1908, page 101 and by section 6 of the chapter, Hattiesburg gets its power to issue bonds from the laws of the state. By section 3333, Code of 1906, municipalities are prohibited from incurring debts or drawing warrants without the money in the treasury to pay the same except as specially authorized in the issuance of bonds. Hattiesburg is under the foregoing section by virtue of section 6, chapter 108, Laws 1908, and yet

section 3333 is not a general law but a special law. It applies to municipalities which are operating under chapter 99, Code 1906, entirely or partly. That it does not apply to all municipalities is plain from the provisions of section 3441, Code 1906, providing what sections shall apply to all municipalities, as amended by Laws 1910, page 207. Section 3333 is not in the list applying to all municipalities. Therefore the provision in this section about debts and bond issues are special and apply only to municipalities which are governed by municipal chapter 99, Code 1906, and the section is not repealed by chapter 209, Laws 1918.

The legislature seems to have realized that section 3333, Code 1906, was not a general law, because it adopted chapter 150, Laws 1916, page 207, and authorizing municipalities under the commission form of government to borrow money for current expenses, etc., and provided that an election for that purpose should not be necessary.

Section 3333 gave authority to borrow money but did not apply to municipalities not operating under the Code chapter 99, as the legislature of 1916 decided. We submit therefore that section 3333 under which the city of Hattiesburg is operating is not changed, repealed or modified by the Act of 1918, chapter 209.

There are two different and distinct provisions for commission governments for municipalities in this state. The first law passed on that subject is chapter 108, Laws 1908. The city of Hattiesburg is operating under this chapter. The second is chapter 120, Laws 1912. This chapter provided a more elaborate scheme for municipal government than chapter 108, laws 1908. A muncipality operating under chapter 108, Laws 1908, is largely dependant on chapter 99, Code 1906, but chapter 120, Laws 1912, fully provides for all the needs of the municipality. This chapter provides elections on all bond issues and interest interest bearing debts.

Chapter 120, Laws 1912, also provides a ready means

for a municipality to be brought under it. This chapter provides that an election, on petition of ten per cent of the qualified electors shall be ordered to determine whether the commission government shall be adopted, therefore the voters have the right to vote on all bonds issued. Thy have this matter in their own hands and every municipality in the state can put itself under chapter 120, Laws of 1912, under which chapter bond issues must always be voted on. The voters have this power in addition of the right of protest under laws against bond issue. Therefore the legislature must not have intended chapter 209, Laws 1918, to apply to bond issues.

If the legislature did intend to amend the laws providing for bond issues without elections in certain limitations then chapter 209, Laws of 1918, does not comply with section 61, Constitution of 1890, and is void. The act does not contain the laws as amended. If the chapter 209, Act 1918, was intended to amend section 3333, Code of 1906, section 3416 and especially section 3419, Code, which last section provides for notice of intention to issue bonds and gives right of protest, then these sections as amended should have been set out in the act. This is especially true in regard to sections 2 and 3, chapter 147, Laws 1914. Section 2 provides that the bonds to be issued including all outstanding bonds shall not exceed in amount seven per cent of the assessed value of the taxable property unless two-thirds of the qualified electors shall authorize such issue. Section 3 provides that in cities of more than ten thousand inhabitants the amount shall not exceed fifteen per cent of the assessed valuation to be approved by a two-thirds vote. These sections appear to be amended by section 2, chapter 209, laws 1918, if that chapter applies to bond issues, because as to interest bearing debts said section provides a majority vote instead of a two-thirds majority vote as required in sections 2 and 3, chapter 147, Laws of 1914. This last

named section (section 3) puts a maximum bond issue in any event at fifteen per cent of the assessed valuation, while section 2, chapter 209, Laws 1918, sweeps away all restrictions except holding an election and getting a majority vote for the bond issue.

It should be held that sections 2 and 3, chapter 147, Laws 1914 are repealed by section 2, chapter 209, Laws 1918, and that section 61, of the constitution is not violated, then we submit that section 2, chapter 209, Laws 1918, is unreasonable and void because it removes all restrictions as to the amount of bonds that may be issued. A majority voting in an election could vote fifty per cent or one hundred per cent of the assessed valuation of the property in the municipality.

Section 80 of the constitution provides that "provision should be made by general laws to prevent abuse by cities, towns and other municipal corporations of their powers of assessment, taxation, borrowing money and contracting debts." Section 2, chapter 209, Laws 1918. violates this section of the Constitution. If section 2, chapter 209, Laws of 1918, applies to bond issues then all limitations on the amount of bonds that may be issued are removed. The legislature has responded to the mandate of section 80, Constitution 1890, and put a limit on the amount of bonds that may be issued, even with the consent of the voters, but section 2, chapter 209, Laws of 1918, if construed as contended for, repeals these laws. We submit that the repeal of these protective statutes violates section 80 of the Constitution. See the case *Turner* v. *City of Hattiesburg,* 98 Miss. 337.

Chapter 209, Laws of 1918, violates section 71, Constitution 1890, in this: It materially amends section 3414, Code of 1906, providing for notice of intention to issue bonds and authorizing protest to be filed and an election called; it materially amends sections 2 and 3, chapter 147, Laws of 1914. Section 2 limits the amount of bonds to seven per cent of the assessed valuation, unless voted for by two-thirds of the qualified electors

voting and limits the amount in any event to ten per cent of the assessed valuation unless voted for by two-thirds of the qualified electors voting, and limits the amount in any event to ten per cent of the assessed valuation; it materially amends section 3, chapter 147, Laws of 1914, which section limits the amount of bonds in cities of ten thousand, or more inhabitants to fifteen per cent of the assessed valuation, even when voted for by two-thirds of the qualified electors. It materially amends the foregoing sections by striking out the limitation on the amount of bonds to be issued on a two-thirds majority of the qualified electors voting and inserts a provision that a majority of the qualified electors voting can authorize bond issues without restrictions as to the amount. Many other statutes are materially amended but we cannot cite all of them here. The amendments are made without referring to them in the title. One could not get a faint idea from the title that the act amended the laws mentioned above. The purpose of this statute was not disclosed by the title but on the contrary its purpose was hidden by the title.

We think the case of *Levee Commissioners* v. *Insurance Company,* 96, Miss. 832, and cases cited there, support this contention.

We submit that the act violates section 71, Constitution, and that it should be held void.

HOLDEN, J., delivered the opinion of the court.

This suit involves the construction and application of chapter 209, Acts of 1918, and questions the validity of the issuance of twenty-five thousand dollars of municipal bonds of the city of Hattiesburg. The appellants, resident citizens and taxpayers of Hattiesburg, filed a bill against the mayor and commissioners of Hattiesburg, seeking to enjoin them from issuing and selling certain municipal bonds. The bill of complaint alleges that the city of Hattiesburg, operating under a com-

mission form of government, undertook to issue and sell bonds in the sum of twenty-five thousand dollars for improvements and repairs of city property, without a majority vote of the electors at an election for that purpose; that the bonds were not issued on the serial payment plan. A temporary injunction was granted, which on motion was dissolved; the court sustaining the demurrer filed by the defendants, from which decree this appeal was taken.

The appellants present several grounds for reversal, but we consider it unnecessary to notice but one, and that is whether or not the proposed bond issue was invalid because not authorized by a majority of the electors voting at an election to be held for that purpose, as provided in section 2 of said chapter 209, Acts of 1918.

It is the contention of the appellee city of Hattiesburg that chapter 209, Acts of 1918, is not in the way of the validity of the bond issue in question, first, because the words "interest-bearing debt" in section 2 of said act should not be construed to prohibit the issuance of bonds by a municipality without an election as provided for in chapter 147, Laws of 1914; that the meaning of "interest-bearing debt" as used in the act has a restricted meaning, and does not include bonds. This argument is based upon the theory that the use of the words "indebtedness" and "bonds" by the legislature in the different laws dealing with the subject intends and recognizes a distinction between bonds and other interest-bearing debts.

Appellee contends that the evil intended to be remedied by the act was the incurring of debts and obligations by warrants, loans, etc., by county and municipal authorities; that it was not the purpose of the act to repeal or amend the existing laws with reference to the issuance of bonds by counties and municipalities without an election.

The position of appellee is untenable. Chapter 209, Acts of 1918, is plain and unambiguous in its terms. Its purpose was to require all municipalities and counties which had outstanding warrants and other like obligations, with insufficient funds in the treasury to pay same, to issue serial bonds immediately and pay all such outstanding debts. This was mandatory, and the bonds were to be issued without an election thereon. It was the further purpose of the act, under section 2 thereof, to prohibit any county, municipality, or taxing district from incurring any interest-bearing debt whatsoever, be it outstanding warrants, bonds, or any other form or character of interest-bearing debt, unless such interest-bearing debt be first authorized by a majority of the electors who shall vote in an election to be called for that purpose. The act expressly provides, however, that a municipality or county may continue to borrow money in anticipation of taxes as now provided by law. It will be observed that section 4 of said act provides that no county or municipality shall issue any bonds except on the serial payment plan. This provision of section 4 with reference to issuance of bonds, when read in connection with section 2, warrants the view, from the context of the act, that when the legislature spoke of interest-bearing debts in section 2, it was speaking of bond issues, as well as all other interest-bearing obligations, and expressly excepted the borrowing of moneys in anticipation of taxes in section 2. A bond is simply the evidence of an interest-bearing debt. Therefore we conclude that chapter 209, Acts of 1918, is applicable in the case before us, and that since the bond issue in question was not authorized by a majority of electors, it is void. *Madison County* v. *Howard*, 80 So. 524.

Of course, we are not concerned with the policy or wisdom of any legislative enactment. Our duty lies only in construing and interpreting the legislative intent as we find it expressed in the particular law. We

see no difficulty here in ascertaining the intent and purpose of the act in question. The legislature un-undoubtedly meant to provide that hereafter interest-bearing debts in any form, bonds or otherwise, should not be imposed upon the people of any county, municipality, or taxing district, except by their express consent, at an election to be held for that purpose. The wisdom of the law seems to be based upon the theory that these burdens should be imposed only by express consent of those to be burdened; that the distance between bonds and "bondage" should be shortened only by the direct exercise of the right of "self-determination" in the people.

Counsel for appellee concedes that the case of *Madison County* v. *Howard, supra,* is in his way, but urges that the decision is unsound, and that the question of the constitutionality of chapter 209, Acts of 1918, was not presented in that case. We hold the act is valid and constitutional.

Able counsel for appellee contends that if the legislature intended by the act of 1918 to amend the laws providing for bond issues without elections, the act does not comply with section 61 of the Constitution, and is void for the reason that it does not contain the laws as amended. We do not think the act of 1918 seeks to specially amend previous laws on the subject of bond issues, but, if so, it clearly sets out all amendments intended, and plainly provides the repeal of every act in conflict therewith. The purpose of section 61 of the Constitution is to prevent ambiguity and uncertainty with reference to the amendment of previous acts, but we find no uncertainty in the act here in question.

It is also contended by counsel for appellee that section 2 of said act is void, because it removes all restrictions as to the amount of bonds that may be issued, in violation of section 80 of the Constitution. This contention has been settled adversely to appellee by this

court in *Turner* v. *City of Hattiesburg,* 98 Miss. 348, 53 So. 681.

It is further contended by appellee that chapter 209, Acts of 1918, violates section 71 of the Constitution, in that it amends section 3415, Code of 1906, and other sections and chapters of the bond laws of this state; that these amendments are made without referring to them in the title. We do not think there is any merit in this position, because the title to the act in question is sufficient, and for the further and better reason that the point presented was settled by this court in *Bryan* v. *City of Greenwood,* 112 Miss. 730, 73 So. 728.

The court below erred in sustaining the demurrer to the complaints' injunction bill and dissolving the injunction, and the decree is reversed, and the cause remanded, with leave to the defendants to answer within sixty days after the filing of the mandate in the lower court.

*Reversed and remanded.*