Board of Highway Commissioners of Edinburg District
*v.* Warren et al.

[83 South 479, In Banc. No. 2849.]

1. Highways. *Road district cannot incur debt unless authorized by electors.*

    Under Laws 1918, chapter 209, section 2, forbidding incurring interest bearing debts unless so authorized a road district cannot issue bonds for improvement of roads unless authorized by a majority of the electors voting in an election called for that purpose.

2. A road district is a taxing district within the statute relating to incurring debts.

    Under Laws 1918, chapter 209, section 2, prohibiting the incurring of interest bearing debts unless authorized by a vote of the majority of electors a road district is a taxing district.

Appeal from the chancery court of Leake county.

Hon. A. Y. Woodward, Chancellor.

Suit between the Board of Highway Commissioners of Edinburg road district and E. B. Warren and others. From a judgment for the latter, the former appeals.

The facts are fully stated in the opinion of the court.

*J. B. Harris,* for appellant.

The questions presented by the record in this case are important ones. The sole question is, as to the power of the chancellor in the hearing of objections to the validation proceedings under the Act of September 2, 1917, chapter 29. In other words, is a judgment of a board of supervisors of the same binding and conclusive effect in a validation proceeding under said act, as it, would be in any other proceeding, in which it might be attacked.

Is the judgment of a board of supervisors in a matter over which it has jurisdiction subject to collateral attack, and to review by the chancellor in validation proceedings? Was it the purpose of the legislature to confer upon the chancellor, in validation proceedings, *quasi*-appellate jurisdiction, and the power to review and open up the judgment of a board of supervisors to the same extent that the same might be reviewed on appeal to the circuit court?·

It is settled beyond any question in this court that the judgment of a board of supervisors in matters over which they have jurisdiction are conclusive and not subject to collateral attacks, that the remedy, if any, is by direct appeal to the circuit court as provided by the statute, and that remedy is exclusive, see: *Wolford* v. *Williams,* 110 Miss. 637; *Johnson* v. *Board of Supervisors,* 74 So. 321; *Hinton* v. *Perry County,* 84 Miss. 548. See, generally, *Dye* v. *Mayor,* 119 Miss. 359 (collateral attack).

It was settled by this court in the case of *Thomas* v. *Lee County,* 53 So. 585, 95 Miss. 232, and in the case of *Dean* v. *Desoto County,* 82 So., that the filing of the petition required by the statute, by the qualified electors for the establishment of a road district, and the issuance of bonds, conferred upon the board of supervisors jurisdiction of the matter.

In the case at bar, a petition signed by twenty per cent. of the qualified electors of the Edinburg road district was filed with the board of supervisors, under the provisions of chapter 176 of the Acts of 1914 asking for the establishment of the Edinburg road district and for the issuance of bonds.

The board of supervisors in pursuance with the requirements of the act caused notice to be published as required by law setting forth the purpose for which the bonds were to be issued, and describing the road district for which they were to be issued and its purpose to

issue bonds on a certain day therein named, unless a
counter petition, as required by law, was filed, within
the three weeks next preceding the day fixed by the
notices on the board would be authorized to act.

It appears that a counter petition was filed, or what
is purported to be a counter petition but upon canvas-
sing the petition is was found to be irregular and illegal
in several respects, in addition to its not being filed in
time, and the board of supervisors proposed to reject
petition, but entered an order allowing the petition to
to be withdrawn and giving the counter petitioners thirty
days within which to file a proper petition. See page
27 of the record. The record, however, recites that
after this order was made, the board of supervisors
were advised that they had no authority to extend the
time for filing the counter petition, no legal petition
being on file at the time required by law. See page
36 of the record, and the board then proceeded to
order an issuance of bonds in the sum of twenty thou-
sand dollars, as recommended by the road commissioners,
and the said bonds were issued and advertised for sale
and bid in by the Merchant's Bank & Trust Company
of Jackson, Mississippi. It does not appear, however,
that the bonds have been delivered. The proceedings
in reference to the issuance of the bonds were instituted
in April, 1917, an order authorizing the bonds was made
in July, 1917, and the bonds were offered for sale and
bid in, as above stated, on December 3, 1917.

Validation proceedings were instituted under the
provisions of the Act of 1917, the matter having been
submitted for validation to Mr. Thomas M. Owen, who
was then state's bond attorney, who rendered an opinion
May 15, 1918, that the bonds were legal, valid and bind-
ing. See pages 12 and 13 of the record.

The matter was set for hearing before the chancellor
for June 28, 1918, and on that day three taxpayers filed
objections to the bonds in general terms. See page 3 of

the record. Mr. Owen, state's bonds attorney, made a motion to strike out these objections from the file, upon the ground set forth in a motion which appears on page 4 of the transcript. The objectors afterwards on July 11, 1918, filed specific objections, see pages 5 to 9 of the record, at which time the chancellor proceeded to hear their objections and take testimony.

The court will see from the reading, the objections, and the testimony, that the whole contention was an attack upon the judgment rendered by the board of supervisors; that it erred in its judgment as to its power to extend the time for the filing of a counter petition. There is nothing else in the controversy. There is a charge of fraud in the objections, but this is general and not sustained by the record.

I insist that whether the board of supervisors were right or wrong in its conclusion, the matter could not be inquired into in the validation proceedings, that the remedy for the objectors was by an appeal to the circuit court, and that was the exclusive remedy. The transcript shows, page 49 of the record, that no appeal was taken from the judgment of the board of supervisors establishing a road district and authorizing the issuance of bonds, and that no suit or action of any kind is pending against the establishment of the road district or the issuance of the bonds, and that no action or suit was threatened.

The only clause in the Act of 1917 in reference to the functions of the chancellor is contained in the next to the last paragraph of section 2 and is in these words: "And on the hearing, the chancellor may hear additional evidence and inquire into the validity of the bonds proposed to be issued and enter a decree in accordance with his findings." This language is somewhat vague, and the question now is, is that board enough and sufficiently clear as to confer upon the chancellor the power to open up the whole pro-

ceeding and set aside the judgment of the board of supervisors, if in his opinion he should believe that the board of supervisors erred in the conclusion which they have reached, the question not being a jurisdictional one or one of fraud or of any excess of power in violation of any positive- statute.

In other words, does the language, hear additional evidence and inquire into the validity of the bonds to be issued," carry with it, or embrace and confer upon the chancellor the power to set aside the judgment of the board of supervisors, otherwise conclusive and not subject to collateral attack, and try the whole question *de novo*. Have judgments of boards of supervisors no conclusive effect in validating proceedings under the Act of 1917? The circuit court has jurisdiction on appeal to try a matter arising before the board of supervisors *de novo* and enter such judgment as the board of supervisors should have entered. I submit that the language quoted from the Acts of 1917, falls very far short of conferring any such power upon the chancellor. There are many matters affecting the validity of bond issues which could be dealt with by the chancellor which could not be cured by any judgment of the board of supervisors, as for instance questions going to the jurisdiction. If proceeding under the Acts of 1914, chapter 176, the board of supervisors should have undertaken to issue the bonds without a petition on the part of the electors, this would be a jurisdictional matter which the chancellor could consider. If the notice required by the statute was not given and these matters appear upon the record, as they must affirmatively appear, the matter could be considered by the chancellor. If the maturity of the bonds was not as prescribed by the act, it is a matter which could be passed upon by the chancellor because these being positive statutory requirements, not confided in any way to the judgment or discretion of

the board are all matters which could be inquired into by the chancellor. If in case of an election there was actual fraud vitiating the election, or the record shows that no election was held where an election is required, these matters being positive statutory requirements could not be dispensed with by the board of supervisors, and any issue of bonds in violation thereof would be invalid. This matter, however, of the sufficiency of the petition and counter petition is a matter for the board of supervisors to determine, and as to those matters its judgment is conclusive and can only be inquired into by direct appeal to the circuit court and would not be subject to collateral attack.

At all events it is highly important that the court should pass upon these questions and determine now whether the power has been conferred upon the chancellor to revise a judgment of a board of supervisors, in matters within its jurisdiction, however erroneous that judgment may be.

It seems to be settled that statutes like the one in question conferring special powers upon a court must be strictly construed and nothing is to be presumed that is not expressly given. The rule is thus laid down in 2 Lewis' Sutherland Statutory Construction, section 564: ''Where special powers are conferred upon a court either of otherwise, general or limited jurisdiction it is rigorously restricted to those granted, and the grant itself is strictly construed; the jurisdictional facts must appear on the face of the proceedings. The court can take no additional power from its general jurisdiction. In the exercise of such special powers it is precisely limited to those plainly delegated. Nothing is to be presumed that is not expressly given.''

I think, therefore, it could not be presumed that the legislature intended to confer upon the chancellor the power to review the judgment of boards of supervisors, in matters within their jurisdiction or power to hear

or determine matters *de novo* or to exercise powers of appellate court. The power of the chancellor, I take it, is to examine the transcript of the record presented, which of course must show affirmatively all of the jurisdictional facts and also it must appear that the provisions of no positive statutory requirements as to which the board of supervisors had no sort of discretion or power to adjudicate has been violated.

We have cited cases above in which this court has held that the judgment of boards of supervisors in matters within their jurisdiction have all the force and effect of judgments of courts of general jurisdiction and can only be attacked upon same ground and for the same reasons such judgments could be attacked.

No one could be hurt by the adoption of the view which I am here advancing, for the reason that the remedy by appeal is speedy, adequate and complete.

It is suggested by counsel for the appellee that the institution of validation proceedings confer jurisdiction upon the chancery court to open up the whole subject. Would the court hold that if the board of supervisors should enter an order referring the matter to the state's bond attorneys for validation before the time for taking an appeal from its order authorizing the issuance of bonds had expired would cut off a right of appeal to the circuit court as provided by the statute? Manifestly not. It is also quite manifest that an appeal to the circuit court taken properly would have the effect of cutting off validation proceedings until the matters had been settled in the circuit court or at least on appeal. Jurisdiction to try the matter *de novo* has been conferred upon the circuit court, no such jurisdiction is conferred upon the chancery court, as we have shown above. Doubtless such jurisdiction might be conferred upon the chancery court, but it would have to be done by some express and clear statutory provision.

As I understand it, the Act of 1917 was intended to afford a speedy procedure for the validation of bonds, which would cut off the flood of litigation which has heretofore arisen in attacks upon bonds of various kinds involving expensive protracted litigation.

Another question presented by the record is this: the bonds in this case were authorized prior to the passage of the Act of 1918, chapter 209. No election was held. The whole matter had been consummated except the actual delivery of the bonds, the bonds were offered for sale and bid in by a proposed purchaser. That was done December 13, 1917, and the offer was accepted by the board  The only thing in the way of delivery of the bonds was the condition that the bonds should be approved by Mr. J. C. Thompson, a foreign bond attorney. It does not appear from the transcript what action Mr. Thompson took in reference to the bonds, or whether they were actually submitted to him for approval. In this state of case, the bonds not having been actually delivered, is it necessary that an election be held under the provisions of section 3 of the Acts of 1918, chapter 209?

In the case of *Board of Supervisors of Madison County* v. *Howard,* 80 So. 524, the point was made that the Act of 1918 did not apply to cases where the road district had been established and was in the course of construction at the time of the passage of the act. The court, however, without passing upon that question specifically in effect decided that the Act of 1918 did apply. The facts in that case, however, are different from the facts in the case at bar as the court will readily see. The entire issue of bonds authorized in the first instance have been exhausted, and the amount of bonds issued in the first instance was up to the limit allowed by law based upon the assessment of the property in the district at that time. The bonds in question were an additional issue necessary to complete the work

and were based on an increased valuation of the property in the district at the time the subsequent issue was made.

The case at bar is entirely different, the bonds have been authorized, they are within the legal limit and it is not a quesion of additional bond issue, and everything had been consummated prior to the passage of the Act of 1918 except the delivery of the bonds. I take it that in a proceeding under the Act of 1914 an issue of one hundred and fifty thousand dollars of bonds were authorized and the board of supervisors proceeded under the authority of the Act, section 2 had issued and sold one hundred thousand dollars of the bonds, the court would not say that they could not issue and sell the remaining fifty thousand dollars, without an election after the passage of the Act of 1918.

Another question is presented and that is this: Should the motion of the bond attorney to strike out the original objections have been sustained? In other words, is it sufficient to meet the requirements of the act that the mere general objections should be filed without stating any ground for the objection? Is it not necessary for the objector to file specific objections within the time fixed by the statute for filing objections. The specific objections were not filed until thirty days after the date fixed by the chancellor for filing objections.

I respectfully request the court to pass upon all of the questions involved, as they are important, and this is the first time the Act of 1917 has come before the court for construction or interpretation.

*J. L. McMillen*, for appellant.

There is no question at issue as to the rights of requiring an election on question of bond issue except within the bounds of the statute. There is no law board, in ordering the issuance of these bonds, stayed

that provided by statute, and when objectors have failed
to avail themselves of the rights there given them,
they can't be heard to complain.

We might eliminate the fact that objectors did not
comply with the law requiring them to file a petition
signed by twenty per centum of the qualified electors
of the district within "three weeks next preceding"
the first Monday in May, 1917, and still the proceeding
of the board in ordering the issuance of these bonds is
valid and binding. On May 7th, the day fixed for the
issuance of the bonds, the board took up the petition of
objectors and by order entered on its minutes of that
day, after examining and carefully considering the peti-
tion, found that the same "was irregular as to the
signatures thereto, and the same did not conform to
the law." These were questions on which the board had
full jurisdiction to pass, and having adjudicated them,
their action was final, except on appeal to the circuit
court. In the case of *Thomas* v. *Board of Supervisors,*
53 S. 585, the court said: "The petition conferred
jurisdiction on the board to act in accordance with the
powers conferred by the act. After the petition was
filed and the notice was published of intention to
issue the bonds, all persons in the district were parties
to the proceeding and are concluded by the proceedings
of the board to which they did not object, at a public
meeting and without objection from any one, the board
abandoned the extention feature of the petition" etc.

The chancery court is as firmly bound by the record
in this case as in an injunction proceeding against the
issuance of bonds or against the collection of taxes to
pay off bonds illegally issued, and all questions of
fraud having been fully eliminated by the testimony
heard before the chancellor the validity of these bonds
rests on the record of the board of supervisors, the
record passed on by the state bond attorney. In the
case of *Johnson* v. *Board of Supervisors,* 74 So. 321,

in the opinion on suggestion of error, the court said:
"In this case the appellants contend that the court
erred in holding that the chancellor found against them
on the facts, stating that the chancellor refused to
give them a finding on the facts.   While no special
finding was put in the records, the judgment rendered
had the effect of finding against the appellant on the
facts.   The order of the board of supervisors shows
the jurisdictional facts on its face expressly reciting
that twenty per cent. of the qualified electors had
petitioned for the board to adopt the law.   This being
true, its judgment had all the effect of a valid judg-
ment of a court of general jurisdiction, and can only
be questioned by a direct proceeding by appeal or
*certiorari.*   The circuit court has supervisory jurisdic-
tion of all inferior tribunals, and the chancery court has
no such jurisdiction, and when the records show juris-
diction in the board to pass the order, chancery cannot
question the validity of the proceedings.   In the case
of *Hinton* v. *Perry County,* 84 Miss. at page 546, 36
So. at page 567, this court said: Actions of the board
not involving jurisdictional power are conclusively
right in this collateral litigation.   Its jurisdiction be-
ing, in this matter, limited, the minutes must show that
the jurisdictional facts were found to exist.   This being
done, there is no need ever to set forth the evidence
in the judgment and it is not controvertible, except on
direct appeal.

In that case the board was exercising a statutory
power, while in this case it was vested by the constitu-
tion with full jurisdiction. See also, *Wolford* v. *Williams,*
110 Miss. 637, 70 So. 823, where this court held that an
appeal from the board was the exclusive remedy.

At the regular June, 1917, meeting, on the · 6th
day of that month, the board of supervisors, among
other things found as follows: "Whereas, said board
of supervisors found at their May, 1917, meeting, that

20.  121—Miss.

certain qualified electors of said road district had filed a petition against the issuance of the road bonds of said district on May 7, 1917, and that said petition was irregular as to the manner of the signatures thereto and that the same did not conform to the law, and, Whereas, the said petitioners who had joined in said illegal and insufficient petition thereupon asked permission to withdraw their petition filed against the issuance of the bonds of said road district and to be allowed time in which to circulate a petition conforming to the law in such cases, which request was by the said board of supervisors granted and the petition accordingly withdrawn from the files by those interested therein and, Whereas, a petition was filed by certain citizens of said road district, on June 4, 1917, protesting against the issuance of the bonds of said road district, and this cause came on for hearing before the board of supervisors at this regular June, 1917, meeting and the board after hearing the petitions and proof adduced before them in open court found as follows: that the original petition praying for the establishment of said Edinburg Road District of Leake County, Mississippi, and the issuance of bonds thereon was made and filed in due and legal form; that the order ordering that notice of publication he made of the purpose of the board to issue the bonds of said road district at the regular May, 1917, meeting thereof was duly and legally made and entered on the minutes; that the publication of notice of their purposes to issue the bonds of said road district at said May, 1917, meeting was duly and legally made; that no legal petition was filed against the issuance of the bonds of said road district within the time allowed by law, and that the board was without authority of law to grant an extention of time within which to file such opposing petition, and that upon the present hearing there is no petition legally o nfile against the issuance of the

road bonds of the said Edinburg Road District of Leake County, Mississippi.

Now, therefore, be it resolved and ordered by the board that Edinburg Road District of Leake County, Mississippi, formed and organized, created and bounded as aforesaid be and the same is hereby found and declared to be fully and legally under the operation of the provisions of chapter 176 of the Laws of 1917.

And it is further resolved and ordered that the road bonds of said Edinburg Road District of Leake County, Mississippi, be issued in an amount or amounts not to exceed ten per cent. of the assessed value of all taxable property of said road district, as provided by chapter 176 of the Laws of 1914, for the purpose of constructing one or more public highways in said road district.

*J. W. Wadsworth* and *Monroe McClurg,* for appellees.

The first insistence of counsel for the appellant is that no petition by twenty per centum of the qualified electors of the proposed road district was filed against the issuance of the bonds within three weeks next preceding the meeting of the board of supervisors on the first Monday, the 7th day of May, 1917; that the district having been established at the previous April meeting the burden was then on the objectors to comply strictly with the law informing, signing and filing their petition; that it was necessary that they should have alleged all jurisdictional facts in their opposing petition, and that they should have appeared before the board and made proof of the facts alleged.

Counsel's statement is erroneous in each detail. The proceeding is purely statutory, and the Act of 1914 does not require the petition to be in writing, except inferentially, nor to be signed or filed, nor to state any jurisdictional fact. All of that was required of the original petition for the bonds and that petition gave

the board of supervisors jurisdiction of the whole matter. The opposing petitioners had only to state substantially that they were against the issuance of the bonds. That the opposing petition represented twenty per centum of the qualified electors of the district might have been properly alleged in a written petition, but that was a mere matter of proof and not jurisdictional in any sense.

The petition of the objectors which appellant's counsel states was in fact filed by the clerk of the board on the 7th day of May, contained the names of eighty-two out of the one hundred and fifty-eight qualified electors in the district. There were two petitions, one the copy of the other, circulated and signed. Mr. E. B. Warren had one signed by forty-four names but thinking that all of the names should appear on the same petition, he had his daughter to transfer those forty-four names to the other petition in the hands of Mr. Blocker which had thirty-eight names on it. It was found that of the forty-four names on Mr. Warren's petition only thirty-eight were genuine, and of those of Mr. Blocker's petition twenty-seven were genuine making sixty-five genuine subscribers of the one hundred and fifty-six legally qualified electors in the district, or over forty per centum thereof. The mere mistake in transferring the forty-four names to the other petition with thirty-eight on it, could have been and unquestionably would have been corrected, because Mr. Warren said that he had left it at home after the transfer. He would have gotten it but at this juncture Mr. Walker, the board's adviser, not being mindful or advertent at that moment to the requirement of the statute that the objecting petition should be gotten up within the three weeks, during the publication of the original petition for the issuance of the bonds, and in the fear that the irregularity of the signatures might affect the sale of the bonds, and in the hope that time might quiet an increasing

objection to the issue of the bonds, voluntarily and in patronizing spirit, suggested first to the board that they give the objectors thirty days in which to get up another petition he thought then that the board had authority to do it the board accepted the suggestion and he wrote the order that was entered on the minutes. That order provided that ''at the resuest of the objectors they were allowed to withdraw their petition for he believed that they would need it in getting up the new one.'' The truth was, he says, the objectors did not request to be allowed to withdraw it, but the clerk had that written in the minutes for his authority to let them withdraw the paper.

So then when the searchlight let in on the shadows of the chasm by the chancellor's wise decision to have additional evidence, it is easy to read that on Monday, the 7th day of May, 1917, at the June meeting, the petitioners ''against the issuance of the bonds, in truth and in fact, had on file a written petition signed by largely more than twenty per centum of the qualified electors of the Edinburg Road District'' plainly expressing themselves as being against it, and that was all that was necessary.

The third assignment of error is that the chancellor held that the board of supervisors had power to extend the time for allowing the objectors to file their petition after the expiration of the ''three weeks'' during the publication of the original petition for the bonds. The chancellor did not so hold; there is nothing in the record, or the decree, from which an isference that he did so hold may be reasonably drawn.

As we understand the statute on the ''within that time'' or during the ''three weeks'' publication of the petition for the bonds, it is substantive law requiring the opposing petition. Inferentially only, a written and signed petition, which might be properly filed with the clerk of the board ''within that time'' if re-

quired, but after the positive statement that the oppos-
ing petition shall be had, the form of it, the manner of
signing and the time of filing are not required at all.
Not even in directory words. It must be the law,
especially equity law, that when the petition in the
instant case was filed on May 7th, the first day of the
meeting of the board, with sufficient substance to indi-
cate that the petitions were "against the issuance of
the bonds," every presumption that it. was gotten up
within that time and all other presumptions as to its
sufficiency, were in favor of its validity. While the
record shows that it was only irregular, and did not
conform to law, the argument of counsel in his brief
discloses the fact that the board was erroneously made
to believe that this opposing petition had to contain
all jurisdictional facts in strictly formal way, and that
the burden of so proving it was upon the objectors. In
short, a perfectly legal petition against the bonds signed
by over forty per centum of the qualified electors of
the district was murdered. Not however, beyond the
resurrecting power of the chancery court. That the
"within that time" is purely directory and means for
a petition to be presented at the first meeting of the
board after the begining of the publication of the peti-
tion for the bonds is evident, is shown, by the obvious
appearance that "within that time" was a second
thought and interpolated into the original draft of the
law, and because there was no meeting of the board to
hear petition. The greatest liberality is allowed with
reference to formal requirements in such case before
such bodies.

As was held by Mr. Chief Justice Mayes, on a similar
contention in *Western* v. *Hancock County,* 98 Miss. 800,
809-811. If the petition was presented and filed at the
first meeting of the board, it was sufficient.

The proceedings before the board of supervisors hav-
ing been, at its special request, certified to the chancery

court, a new and largely an original jurisdiction, it fell under the judgment of one of the ablest and most conscientious chancellors in the state. The statute, section 2, chapter 28, Laws 1917, page 19 provides: "If at the hearing of any tax payer of the county, municipality or district appears and objects to the issuance of said bonds, then the chancellor may hear additional evidence and inquire into the validity of the bonds proposed to be issued and enter a decree in accordance with his finding."

The chancellor wisely decided to hear additional evidence and inquire into the matter, and doing so, found that "on the law and the facts in the case, the issuance of the bonds was illegal and void."

We respectfully submit that the decree should be affirmed.

Sykes, J., delivered the opinion of the court.

This litigation arises out of the attempted organization- of a road district to be called the Edinburg Road District in Leak County, under chapter 176 of the Laws of 1914. It is unnecessary to recite the various steps taken and the orders of the board of supervisors relating thereto. The last order of the board entered at its June Meeting, 1917, authorized the issuance of twenty thousand dollars worth of bonds. A conditional bid for these bonds was made by a bank of Jackson, Miss., conditioned upon the approval of the bonds by some expert bond attorney of New York. The record does not show the approval of this attorney. The bonds were never issued and delivered.

Under the provisions of chapter 28, Laws of 1917, the board of supervisors, under section 2 of this act, by order entered on its minutes, transmitted to the bond attorney a certified copy of all papers pertaining to the issuance of these proposed bonds. The bond

attorney, Hon. Thomas M. Owen, now deceased, held the proposed issue valid. The case was then docketed in the chancery court under this section of the act, and upon final hearing the learned chancellor held the proposed bond issue to be void. From which decree this appeal is prosecuted.

A very interesting question is presented by the bond attorney who appears for the appellants in this case. It is his contention that, under chapter 28, Laws of 1917, section 2 thereof, providing for the inquiry by the chancery court into the validity of the issuance of the proposed bonds, this is a proceeding in the nature of a collateral proceeding or attack upon the judgment of the board of supervisors. It is contended by the attorneys for the appellees that under this act the chancellor is given the power to consider the regularity of the proceedings before the board of supervisors, that it is a direct and not a collateral proceeding. It is not, however, necessary for us to decide this question in this case.

If every order entered by the board of supervisors in the proposed organization of  this road district were valid, these bonds could not be issued because not authorized by a majority of the electors voting in an election called for that purpose, as is provided in section 2, chapter 209, Laws of 1918. Under this section no interest-bearing debt except as provided in section 1 of the act (which would not include this bond issue) shall be incurred by any county or taxing district unless authorized by a majority of the electors who shall vote in an election called for that purpose.

There were no outstanding obligations or indebtedness incurred in this case, and there could not be any until the bonds were actually sold and delivered. In the case of *Madison County* v. *Howard,* 119 Miss. 133, 80 So. 524, which was also a proceeding to organize a road district under chapter 176, Laws of 1914, the same chapter

under which this district is proposed to be organized, the court held a road district of this kind is a taxing district as contemplated by section 2 of the this act. This act was also construed in the case of *Heidelberg* v. *Batson, Mayor, et al.,* 119 Miss. 510, 81 So. 225. The court through HOLDEN, Justice, in part said:

"It was the further purpose of the act, under section 2 thereof, to prohibit any county, municipality, or taxing district from incurring any interest-bearing debts whatsoever, be it outstanding warrants, bonds, or any other form or character of interest-bearing debt, unless such interest-bearing debt be first authorized by a majority of the electors who shall vote in an election to be called for that purpose."

It was further held in that opinion that this act was constitutional.

The decree of the lower court is affirmed.

*Affirmed.*