CITY OF JACKSON v. DEPOSIT GUARANTY BANK & TRUST CO.

(In Banc. March 23, 1931.)

[133 So. 195. No. 29233.]

W. E. Morse, of Jackson, for appellant.

Butler & Snow, Geo. T. Mitchell, and Flowers, Brown & Hester, all of Jackson, for appellee.

**Griffith, J.,** delivered the opinion of the court.

The experience under the State Bank Guaranty Law, originally enacted in 1914 (Laws 1914, c. 124) and amended in 1922 (Laws 1922, c. 172) an'd in 1926 (Laws 1926, c. 251), was such that when the Legislature convened in 1930 it was found that there was a deficit in the depositors' guaranty fund of between three and four million dollars. The gathering clouds of financial depression and distress were clearly seen and the apprehension of further and numerous bank failures to occur in the years 1930 .and 1931 was definitely felt. It was foreseen, as an inevitable future consequence, that, if the said law were continued in its full operation, the deficit already large would increase to the point where the necessary assessments to retire the guaranty certificates would drive all the more important and reliable state banks into the national system, and leave the depositors' fund hopelessly aground. It was; therefore, determined to suspend the general operation of the guaranty system until the elapse of such time as, under reasonable assessments, the outstanding certificates already issued could be liquidated.

Thereupon the Legislature enacted on March 11, 1930, the statute now known as chapter 22, Laws 1930. Its provisions so far as material to the case at bar are, in brief: (1) That until all guaranty certificates issued and due to be issued, up to the date of the passage of the act, shall have been paid, .the guaranty features of previous acts shall be suspended, and no further guaranty certificates shall be issued. (2) For the retirement

and liquidation of said outstanding certificates, assessments not to exceed five in any one year, of one-twentieth of one per centum of the average unsecured deposits of the bank, less capital and surplus, shall be made and collected. (3) A depositors' protective fund not to exceed three hundred thousand dollars for each calendar year shall be created by the collection of three per centum on that part of the surplus of the bank exempted from taxation under section 11 of the act, said protective fund to be applied pro rata to the payment of depositors of banks failing during the particular year, each calendar year being a separate period both as to the collection of said protective fund and for the pro rata application thereof. (4) The compulsory creation of a surplus equal to the capital stock by the carrying to surplus each year of one-half the net profits of that year until the surplus shall amount to not less than one hundred per cent of the capital stock. (5) The investment of said surplus in bonds of the United States, or state of Mississippi, or in those of the counties, districts, and municipalities of the state. At this point, we may insert in full the text of section 11 of the act which forms the chief center of the attack in this case: "Provided the surplus is invested as provided in the preceding section that to encourage banks to accumulate surplus and thereby better maintain themselves as public institutions and to justify the requirements that while operating as state banks they meet the assessment made by the State Banking Department from year to year to pay the outstanding guaranty certificates, the surplus of all state banks in an amount not exceeding one hundred per cent of their capital at the time of the passage of this act, or at the time of their organization if organized after the passage of this act, shall be exempt from all taxation until the outstanding guaranty certificates as described in this act are liquidated as herein provided, at which time such exemptions shall cease. In returning their property for

taxation for the year 1930 and thereafter, so long as the bank pays the guaranty assessments as herein provided, each bank shall deduct such exempt surplus from the valuation of the shares of capital stock arrived at in the manner provided by section 1 of chapter 193 of the Laws of 1920, being section 8203 of Hemingway's Code of 1927, for the purpose of fixing the valuation on which state, county and municipal taxes shall be paid; provided that where banks existing under the national laws comply with the provisions of this act, the basis for the taxation of the shareholders thereof shall be the same as for state banks.''

The general power of the Legislature to enact legislation of this sort is sustained by the Supreme Court of the United States in the recent case, Abie State Bank v. Weaver, 51 S. Ct. 252, 75 L. Ed.——(decided February 24, 1931). The attack here, however, is under several different and specific sections of our constitution; and these we will now notice in the order in which the parties have presented them in their arguments, omitting one or two points which seem not to have been seriously urged, and which do not require attention.

It is the first contention of appellant that the said eleventh section of the act in question is violative of section 61 of the constitution, which latter section ordains that ''no law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length. The contention is that this section 11 attempts to amend section 1, chapter 193, Laws 1920, without inserting the latter section in full as amended, and reliance is had upon the often-cited case of Seay v. Laurel Plumbing Co., 110 Miss. 834, 71 So. 9. To carry the construction of the said constitutional section to the limits contended for in the present case would greatly embarrass the progress of legislation, would incumber many enactments with a useless redundancy, and would cast legislation as a

rule into greater uncertainty in respect to the validity thereof than would be endurable. In Heidelberg v. Batson, 119 Miss. 510, 525, 81 So. 225, 226, it was said that ''the purpose of section 61 of the constitution is to prevent ambiguity and uncertainty with reference to the amendment of previous acts, but we find no uncertainty in the act here in question.'' We are satisfied with that announcement, when taken in connection with the full discussion by the court in Hart v. Backstrom, 148 Miss. 13, 113 So. 898, and those cases being applicable and controlling here, we hold that the point made by appellant under said section 61 of the constitution is not well taken.

It is next contended that the act in question is violative of section 87 of the constitution which ordains that: ''No special or local law shall be enacted for the benefit of individuals or corporations, in cases which are or can be provided for by general law, or where the relief sought can be given by any court of this state; nor shall the operation of any general law be suspended by the legislature for the benefit of any individual or private corporation or association, and in all cases where a general law can be made applicable, and would be advantageous, no special law shall be enacted.'' It is the contention that the general bank guaranty law of the state was suspended in its operation, and during said suspension the proceeds of the assessments on deposits are to be applied to the liquidation of the past outstanding certificates, thereby suspending a general law for the benefit of individuals and private corporations. The inherent power of the Legislature to suspend the operation of a general law is not questioned. That power could not be questioned, for the quoted section of the constitution implies the power of suspension and places a limitation upon it, and states the limitation. Granted the power of suspension, then it follows as a necessary consequence that a general law may be suspended by another general law.

The question then simply reduces itself to the inquiry whether the act here under review is a general law, which we answer in the affirmative. "A law is general in the sense of such a constitutional provision [referring to said section 87, Const.] when it applies to and operates uniformly on all members of any class of persons, places, or things requiring legislation peculiar to the particular class dealt with by the law." State v. Gilmer Grocery Co., 156 Miss. 99, 125 So. 710, 717; State v. Speakes, 144 Miss. 125, 109 So. 129; Toombs v. Sharkey, 140 Miss. 676, 106 So. 273.

The evil at which the particular clause in the constitutional section, here brought into consideration, was chiefly directed, was the previous practice of suspending a general law in part in favor of certain individuals or corporations, thereby making them favorites, while the law continued in its operation as to all others not so favored. Here, however, the operation of the law is suspended as to all alike, and is general, wherefore there is no constitutional objection that in another respect the present act may apply beneficially to a particular class, since it operates uniformly on all members of that class, upon all who are entitled therein, and the class is germane to the subject of the legislation and is not an arbitrary classification without regard to its just relation to the thing to be effected. See authorities cited next foregoing paragraph.

The observations in the two preceding paragraphs dispose of the contention that the act is in contravention of section 90 (h) of the constitution, which prohibits local, private, or special laws for the exemption of property for taxation. We are holding that the legislation here attacked is a general law, and is not local or private or special.

The next contention is that the act is violative of sections 112 and 181 of the constitution. The first section, 112, provides that: "Taxation shall be uniform and

equal throughout the state. Property shall be taxed in proportion to its value. . . . Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value. . . . But all such property shall be assessed at its true value. . . ." And section 181 provides that: "The property of all private corporations for pecuniary gain shall be taxed in the same way and to the same extent as the property of individuals, but the legislature may provide for the taxation of banks and banking capital, by taxing the shares according to the value thereof (augmented by the accumulations, surplus, and unpaid dividends), exclusive of real estate, which shall be taxed as other real estate. . . ." Under these two sections, appellant challenges the power of the legislature to exempt the surplus of banks for any purpose.

The power of the Legislature to exempt from taxation is no longer an open question in this state. Through a long course of judicial decision and legislative action it has become firmly settled that the power of exemption is within the legislative discretion, subject only to the limitation that the exemption shall not be arbitrary; that is to say, it must have some just and rational relation to the promotion of the public welfare. The question has recently been under review here and the court has said that: "the only limitation upon the legislative power to exempt property from taxation is that 'there must underlie the exercise of the power "some principle of public policy that can support a presumption that the public interest will be subserved by the exemption granted" . . . and the classification of the property exempted "must be based on some reasonable ground, and some real difference which bears a just and proper relation to the object sought to be accomplished." ' " Miller v. Lamar Life Ins. Co. (Miss.), 131 So. 282, 286; City of Jackson v. Mississippi Fire Ins. Co., 132 Miss. 415, 95 So. 845. Under these settled principles, if and

when the commercial and financial conditions of the country, and particularly within the state, have become such as to justify it, for the safety and soundness of banks and their preservation for the public service, the Legislature could exempt all banks from all taxation, so long as the predicate conditions continued to exist. If then banks could be exempt from all taxes, it would seem to follow as a logical and legal consequence that the exemption could be in part, as is the case here.

But it is argued that, when the Legislature has adopted the scheme of taxation for banks permitted by section 181 of the constitution, and has segregated bank property for assessment upon a basis different from that of individuals, then the prescribed alternative mode of assessment "by taxing the shares according to the value thereof (augmented by the accumulation of surplus, and unpaid dividends)" must be observed in its entirety and as an exclusive method, and cannot be divided for the purposes of exemption into parts. While this argument is plausible and persuasive, we think that the language of the Supreme Court of the United States in the recent case of Bain Co. v. Pinson, 51 S. Ct. 228, 229, 75 L. Ed. —— (decided February 24, 1931), is applicable here: "The interpretation of constitutional principles must not be too literal. We must remember that the machinery of government would not work if it were not allowed a little play in its joints." If the principle of literalness contended for by appellant were applied to section 112 of the constitution, all exemptions would be excluded. There is no more reason for strict literalness in respect to section 181 than in regard to section 112; and we hold, therefore, that the exemption of the bank surplus was within the legislative power, under the conditions present. The case of Adams v. Bank, 75 Miss. 701, 23 So. 395, relied on by appellant, is far different from this on its facts, as well as in respect to applicable principles. The concluding paragraphs of the opinion in that case

distinguish it, in advance, from the case now being decided.

Finally, it is contended that the act is invalid because it attempts to regulate national banks by state legislation, the particular provision of the act which is thus sought to be brought in question being the concluding portion of the above-quoted section 11 of the said act. The issue attempted to be raised in the respect mentioned is not properly before us. The national banks are not complaining here, and, so far as we can know, may never complain or have any cause so to do. See, on this point, City of Jackson v. Mississippi Fire Ins. Co., supra; Miller v. Lamar Life Ins. Co., supra; Miller v. Columbus & G. Ry. Co., 154 Miss. 317, 122 So. 366.

We are of opinion that chapter 22, Laws 1930, is not violative of the constitution, and the judgment is therefore affirmed.

Affirmed.

**Ethridge, J.,** delivered the dissenting opinion.

I dissent from the majority opinion with extreme reluctance and diffidence. I realize that the situation developed by the guaranteed deposit banking law called for legislation to remedy the situations, and I am in sympathy with the effort on the part of the Legislature by appropriate legislation to do what may be done consistent with the constitution to remedy the situation. In so far as exemption of the surplus required to be created and invested in the security named in the statute no harm is done, as the property per se would be exempt from taxation if the banks were assessed in accordance with the general law applicable to individuals and other corporations generally.

I dissent with diffidence because I have great confidence and respect for the opinion of the judges joining in the majority opinion, but, after full consideration of

the constitutional sections hereinafter referred to, I think the Legislature was without power to grant the exemption under the scheme of taxation providing for the taxation of banks and under the requirements of section 181 of the state constitution. In my opinion this section of the constitution is a direct and important limitation upon the power of the Legislature to grant exemptions. The very purpose of the section was to require the property of corporations for pecuniary gain to be assessed upon such property that it owned, as the individual would be assessed with if the individual owned the specific kind of property owned by the corporation for pecuniary gain.

Section 181 of the Constitution of 1890 reads as follows: "The property of all private corporations for pecuniary gain shall be taxed in the same way and to the same extent as the property of individuals, but the Legislature may provide for the taxation of banks and banking capital, by taxing the shares according to the value thereof (augmented by the accumulations, surplus, and unpaid dividends), exclusive of real estate, which shall be taxed as other real estate. Exemptions from taxation to which corporations are legally entitled at the adoption of this constitution, shall remain in full force and effect for the time of such exemption as expressed in their respective charters, or by general laws unless sooner repealed by the Legislature. And domestic insurance companies shall not be required to pay a greater tax in the aggregate than is required to be paid by foreign insurance companies doing business in this state, except to the extent of the excess of their ad valorem tax over the privilege tax imposed upon such foreign companies; and the Legislature may impose privilege taxes on building and loan associations in lieu of all other taxes except on their real estate."

The clause in the constitution, above set out, "but the legislature may provide for the taxation of banks and banking capital, by taxing the shares according to the

value thereof (augmented by the accumulations, surplus, and unpaid dividends), exclusive of real estate, which shall be taxed as other real estate,'' provides a special scheme for taxing banks and banking capital, which the Legislature may follow, rather than assessing banks and banking capital under the assessment laws provided for the assessment of property of individuals and other private corporations. Where the Legislature adopts a plan in accordance with this section, it must follow the section in full and cannot change the requirements of the section by exempting the accumulations, surplus, and unpaid dividends. In taxing banks under this power the Legislature and the taxing authorities must assess the accumulations, surplus, and unpaid dividends as a part of the bank's property. The requirement is mandatory. The Legislature cannot adopt any other special mode of assessing banks and banking capital, but must either follow this special method or must follow the scheme and plans for assessing the property of individuals and of private corporations.

The rule is well settled in this state in construing constitutional provisions that, where a constitutional section is in plain language, it must be enforced as written, regardless of the evil to which it may lead, and where a constitutional section deals with the subject-matter its provisions cannot be enlarged or restricted by legislative enactment in the absence of constitutional warrant for so doing. Where the constitutional section enumerates powers granted or denied, it must be held to have named all of the powers so dealt with and as being, with necessary implication, the sole limit of authority or restriction. State v. Henry, 87 Miss. 125, 40 So. 152, 5 L. R. A. (N. S.) 340. In Henry v. State, 87 Miss. 1, 39 So. 856, the court had under consideration the question as to whether the governor of the state could institute a suit in the name of the state. It was held that the powers of the governor are defined by Constitution 1890, sections 116-143, and that he is not empowered thereby to

institute a suit for and in the name of the state; and it was held in that case that the common-law powers supposed to be inherent in the governor's office did not exist because of the enumeration of specific powers in the constitution, and that this enumeration precluded the existence of powers not enumerated. A similar rule was held in Wynn v. State, 67 Miss. 312, 7 So. 353. In that case it was held that the Legislature could not add to the qualifications for holding office of a county superintendent of education, but that, the constitution having in certain cases named qualifications for officers, and in all others had provided that qualified electors only should hold office, the constitution named the only qualifications which the constitution intended public officers to have. In McCool v. State, 149 Miss. 82, 115 So. 121, it was held in the third syllabus of the opinion: ''Where the constitution deals with a subject, its provisions cannot be enlarged or restricted by legislative enactment, in the absence of constitutional warrant for so doing; and, where the constitution enumerates power granted or denied, it must be held to have named all of the powers so dealt with as being, with the necessary implications, the sole limit of authority or restriction.'' That decision dealt with an attempt to remove a public officer of a municipality from office, because of an increase in the indebtedness of the municipality not authorized, as required by section 3430 of the Code of 1906, section 7015, Hemingway's 1927 Code, which provided, in part: ''. . . In case of an increase of indebtedness not so authorized, the mayor and aldermen shall not succeed themselves or each other.'' And this part of the section was declared to be unconstitutional. The decision was by the court en banc. In that case we quoted from Wynn v. State, supra, the opinion written by Judge Campbell, as follows: ''These provisions make it clear, we think, that every qualified elector is eligible to any office for which other qualifications are not specifically required

by the constitution. For many of the offices created by its qualifications of age or residence are prescribed. As to other offices for which it provides there are no qualifications required, except that contained in section 4 above, viz., to be a qualified elector. This shows that, where other than the general requirement to be a qualified elector was intended, it was prescribed, and where no special qualification for an office was prescribed, it was as intended that the general provision should apply, and to be a qualified elector is sufficient.''

These rules for construing constitutional provisions are of universal application and should be followed. If they are applied, then it is manifest that, where the Legislature adopts a special method authorized by the constitution, it must take the requirements and limitations of the constitution into the special scheme, and have no power to depart from them or to add to them. In Falkner v. State, 134 Miss. 253, 98 So. 691, at page 259 of the Mississippi Report, page 692 of 98 So., we quoted rules for construction as follows: '' 'The object of the Constitution being to protect life, liberty and property, no word in the Constitution having this effect can be rejected or disregarded in construing the Constitution, but all such words are to have full effect.' Thompson v. Grand Gulf R. R. & Banking Co., 3 How. (Miss.) 240, 34 Am. Dec. 81. 'A constitution should be construed so as to effectuate, not defeat, the policy indicated by its framers.' Brien v. Williamson, 7 How. (Miss.) 14.'' We also quoted from Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, in part as follows: ''It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their effi-

cacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be obsta principiis.''

It is manifest from a consideration of all the provisions of the constitution upon the subject that the constitutional convention intended to secure an equality in taxation by having all property taxed assessed for taxation by uniform rules so as to apply to all people in equal degree the burdens of taxation. Section 181 of the Constitution, above quoted, is vastly different from the Constitution of 1869, section 13, article 12, which provided: ''The property of all corporations for pecuniary profit shall be subject to taxation, the same as that of individuals.'' The present section of the constitution was designed to get away from the construction that had been placed upon the Constitution of 1869 in a number of cases, and changed the phraseology deliberately and purposely to take from the Legislature the power to exempt the property of corporations, while that of the same kind belonging to individuals was taxed. The language of the first part of the section, ''the property of all private corporations for pecuniary gain shall be taxed in the same way and to the same extent as the property of individuals,'' certainly is clear, and clearly means that, where a corporation for pecuniary gain owns property of a particular kind, and that property is taxed when in the hands of individuals, it must also be taxed when in the hands of the corporation. It is not permissible for the Legislature, or the courts by any legal subtlety or legerdemain, to circumvent the constitution by calling the various kinds of property owned by the bank or corporation capital stock or surplus or any other name, but it means that, while the Legislature may exempt specific property from taxation out of consideration of public welfare, and to promote some end of the government, it

cannot roll it all into one mass and label the mixture something else and defeat the purposes of constitutional equality among the citizens and corporations.

In Toombs v. Sharkey, 140 Miss. 676, 106 So. 273, this court held: "In determining whether a law is general or local or special in violation of Constitution 1890, section 90, its substance rather than its form will be considered." At page 690 of the Mississippi Report of this case, page 274 of 106 So., the court, speaking through Justice McGowen, said: "It is a well-settled rule of construction that the substance of the law many be examined rather than the form, in determining whether or not the classification is reasonable and in further determining whether or not the classification is guised as a general law, when in truth and in fact it is local in its application." It is a familiar rule of law that the court will look into the substance of things rather than the form in which that substance is expressed. Applying this rule to the statute before us, it is manifest that the property of the bank designated as surplus and undivided accumulations and profits is not a particular species of property, but the capital and surplus of the bank for purposes of taxation is made-up from a consideration of all its property of every kind and character. A bank may, and frequently does, own all kinds of specific property. It owns lands, furniture, solvent credits, live stock, vehicles, stock, bonds, and many other kinds of property. To segregate the character of specific property they have into a mass and label that mass as surplus, unpaid dividends, or undivided profit does not divest its actual property of its true nature and character. The substance of the things which it owns is lands, houses, live stock, vehicles, furniture, and various other things, and, where individuals are taxed upon any or all of these specific kinds of property, the banks must be taxed also upon it, unless the Legislature follows the scheme provided in section 181 of the Constitution of 1890. I think it does follow that it cannot take part of it in valuing the

capital stock of the bank and in taxing it, but must take it all. It must follow the section specifically and literally to get the benefits of the special scheme. This court has in a number of cases stated that this scheme was favorable to banks, and that is its self-evident purpose it seems to me.

Individuals loaning money at a greater rate than six per cent. in this state are taxed thereon. The banks, if they follow the constitutional and statutory scheme previous to the enactment of the one now under review, are not assessed upon solvent credits on the amount of such solvent credits as they may own. The bank may have many solvent credits and other items many times in excess of the value of its capital stock and surplus. Its very nature seems to be one for dealing with it in a special manner; this the constitutional convention well knew. It deliberated upon the subject and selected the particular scheme which it would permit, and, having selected a particular scheme, the Legislature and the courts cannot substitute their judgment for the judgment of the constitutional convention. The constitutional convention is the master of each of the departments of government, and the officers and departments of government are the servants or agents of the constitution and should take the orders of the constitution as their sole guide where it has spoken.

In the grant of legislative power the grant was made in general terms, but very many limitations have been imposed upon that grant by the constitution, and the grant is limited with these exceptions and limitations written into the grant by the constitution itself. The purposes of the limitations are manifest. Where limitations and restrictions have been imposed, they are imposed for the public good, and it is the duty of each officer and department of government to give heed and obedience to these restrictions and limitations. In a celebrated case Chief Justice MARSHALL said: ''To what

purpose are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained?" Marbury v. Madison, 1 Cranch, 176, 2 L. Ed. 73.

In dealing with the subject of taxation and corporations, the constitutional convention of 1890 had many evils to deal with that had crept into the state government within its knowledge, and it sought to eradicate or minimize those evils by constitutional provisions and restrictions. To borrow the language of a distinguished writer on constitutional law: "The makers of it had gone through all the distresses that are produced by tyrannical (because centralized) government, by no government, by indefinite and therefore weak government, by local jealousies, by provincialism, and by narrowmindedness exhibited in many forms. Against those they tried to guard in the constitution which they prepared for 'ourselves and our posterity.' However, most of the people who knew that have died. A generation of constitutional illiterates has been reared by the schools, the colleges, the universities, the Fourth Estate, and the Bar." The courts and the bar of all persons should have in mind the evils which the constitutions of the American states and nation were enacted to eradicate, prevent, or minimize, and should studiously seek to know the object of the provisions, and, knowing it, should give effect to it.

A study of schemes of taxation existing prior to 1890 by which special favors were granted both by the general and special laws shows that the burden of government was placed upon those least able to bear it, and the influential and powerful were given preference and exemptions which seriously impeded the general public welfare. Special schemes for taxation for different classes of property existed in the Code of 1880, and in the acts of the Legislature between that date and 1890 which had been upheld by the court in numerous cases. In Adams v. Mississippi State Bank, 75 Miss. 701, 23 So. 395, the court

.was called upon to deal with section 3 of chapter 29 of the Laws of 1894, providing that no city or town shall impose or collect a greater tax on banks for solvent credits than the state tax for the same year, and held that act unconstitutional. This decision was rendered in 1898, and was delivered by Judge TRULY, then a special judge, and in the course of the opinion he said: "At the very threshold of this investigation we are met by the earnest contention of counsel for appellee that section 112 does not refer to municipal taxation, but only to such taxation as may be imposed for the purpose of providing revenue for the administration of state and county affairs." The court held that it did so apply to municipalities. The court then said: "Counsel for appellee next contend that this question has already been passed upon by the supreme court of this state. Not so. A critical analysis of every case cited will show that the exact point here decided was never involved. The case of Huntley v. Winona Bank, 69 Miss. 663, 13 So. 832, strongly relied on, has no application. The constitutionality of the law therein considered was never discussed by counsel, or decided by the court, and therefore the decision is without weight as a precedent. . . . But, precedent and authority aside, this statute will not stand the test when measured by the rules announced by section 112. The whole scheme of taxation as devised by that section is plain, simple, and easily understood. In order to carry out that design, three things are necessary: (1) 'Property must be assessed for taxes under general laws,' because without a legal assessment no tax can lawfully be imposed or collected. (2) Property must be assessed at its 'true value.' This must be done in order to prevent unjust discrimination by selecting different modes of valuation, as had occurred under the Constitution of 1869; the Constitution of 1890 manifestly intending that stocks, bonds, and all other property should be assessed at what it was really worth, and not valued by

any arbitrary rule; no discretion as to valuation being left to the Legislature, as the courts had held was done by section 20, article 12, of the Constitution of 1869. When this is done, when these preliminary but necessary steps of assessment and valuation are taken, in order to complete and carry the plan into effect, the third rule is announced: (3) Property shall be taxed in proportion to its value, and taxation shall be equal and uniform. These are the three rules upon which the entire plan of taxation is reared. You cannot destroy one without marring the symmetry of the whole. Does the statute under consideration conform to the rules here announced? We think not. 'Property shall be taxed in proportion to its true value' means 'property shall pay taxes in proportion to its value.' It can mean nothing else. The constitution says property shall be assessed for taxes at its true value. The purpose of assessment is in order that taxes may be lawfully levied; the purpose of valuation is in order that a just proportion of taxes may be collected. To hold that, after property is assessed for ad valorem taxes under general laws, after a just valuation has been placed upon it, the Legislature can intervene, and grant a special privilege to some favored class by arbitrarily reducing the rate of levy imposed, would be to make of the law a mockery and a sham. We cannot sanction any such legal legerdemain. Yet this is the real effect of the statute under consideration. After deciding that banks and solvent credits shall be subjected to ad valorem taxation, as is all other property; after it is assessed for taxes, under general laws and by uniform rules, at its true value—the Legislature, by this statute, undertakes to relieve this species of property from its just proportion of taxes, thus violating that clear mandate of the constitution which declares that taxation shall be equal. 'Equality of taxation means apportioning the contributions of each person towards the expenses of the government so that he shall feel neither more nor

less inconvenience from his share of the payment than every other person experiences.' "

In Fairbanks v. United States, 181 U. S. 283, 21 S. Ct. 648, 650, 45 L. Ed. 862, the Supreme Court of the United States said: "If the Constitution in its grant of powers is to be so construed that Congress shall be able to carry into full effect the powers granted, it is equally imperative that where prohibition or limitation is placed upon the power of Congress that prohibition or limitation should be enforced in its spirit and to its entirety. It would be a strange rule of construction that language granting powers is to be liberally construed, and that language of restriction is to be narrowly and technically construed. Especially is this true when in respect to grants of powers there is, as heretofore noticed, the help found in the last clause of the eighth section, and no such helping clause in respect to prohibitions and limitations."

In the Y. & M. V. R. Co. v. Southern Ry. Co., 83 Miss. 746, 36 So. 74, 78, a railroad corporation, although affected with the public use, was held to be a private corporation within the meaning of Constitution 1890, section 87. If it was a private corporation within the meaning of section 87, it clearly is one for pecuniary gain under section 181, and this decision is equally applicable to the section under consideration as it is to section 87. This case will be again referred to in discussing another phase of this law suit. In reference to the importance of adhering to the constitution in this case, the court quoted from an opinion rendered by Judge CAMPBELL to the Legislature when the special law, chapter 89, Laws of 1902, Sp. Sess., was under discussion; this opinion Judge CALHOON in writing the opinion of the court adopted. He stated: "The organic law cannot be violated, or its true intendment emasculated, by direction or indirection. The whole of society is vitally interested in the maintenance, in its full integrity, of the constitution which is promulgated, as a whole and in its every part, until amended in the very manner it points out."

This court considered this question of equality of taxation between corporations and individuals in the case of Adams v. Y. & M. V. R. Co., 77 Miss. 194, 24 So. 200, 215, 317, 28 So. 956, 60 L. R. A. 33. That case was a very important case, and counsel representing the litigants were very able and distinguished, and the whole subject was elaborately considered and discussed. The authorities which had held in favor of the power of the Legislature to grant special exemptions to corporations under the constitution of 1869 were considered and reviewed, and it was held that the constitutional question had not been presented and decided in the prior cases. The case of Mississippi Mills v. Cook, 56 Miss. 40, was reviewed and overruled in the important particular in which it held that the Legislature could grant exemptions, etc. In the course of the very able opinion, Chief Justice WHITFIELD said: "One of the vices of the decision in Mississippi Mills v. Cook, is that it did not hold that all the property of private corporations for pecuniary profit was required to be taxed by the terms of the constitution (sections 13, 20, article 12) just as and when the property of individuals was. Instead of doing this, the court decided that all such property was free from taxation, unless the Legislature expressly subjected it to taxation, even though the property of private individuals was taxed, inverting the rule of the constitution. It was certainly an idle performance to declare, as the court did declare, that the whole effect of the constitutional provision was to render the property of private corporations for pecuniary profit liable to taxation. That everybody knew, and to so limit the constitutional declaration was to emasculate it. More than thirty-five years had intervened between the previous constitution of the state and the Constitution of 1869. When that previous Constitution was adopted—in 1832—state was young, and had had little experience with the grasping demands of corporations for grants of exclusive privileges; but the experience of more than thirty-five years

had taught it wisdom in this regard—wisdom learned long prior by older commonwealths like California and Iowa; from the constitution of which latter state the provisions of the Constitution of 1869 in question were doubtless borrowed; and so section 13 of article 12 was put in the organic law of the land, beyond the reach of legislative control, for the express purpose of formulating a fundamentally great line of public policy prohibiting any difference in the exercise of the taxing power between the property of individuals and the property of private corporations for pecuniary profit.'' Further on in the opinion, at page 276 of the Mississippi Report, page 216 of 24 So., the Chief Justice said: ''The argument of appellee that it was intended only to reserve to the Legislature the power of subjecting corporate property to the taxation imposed on individuals, and to avoid the introduction into charters of irrepealable exemptions or discriminations, cannot be supported. Reading these constitutional provisions in the light of their history, and with a due regard to the words in which they are expressed, it is impossible for us to doubt that it was not competent for the general assembly, in the imposition of taxes, to distinguish or discriminate in favor of corporate property subject to taxation. If property of a particular kind is subjected to taxation, and owned by a corporation, it must bear the rate of taxation imposed on individuals. While the constitution inhibits the exemption or discrimination in favor of corporations, it equally inhibits a discrimination against them. Equality in bearing a common burden, which is natural, right, and equity, is secured alike to the corporation and to the citizen.'' Further in the opinion, page 277 of 77 Miss., 24 So. 216, the Chief Justice said: ''The court says: 'What are we to understand to be intended by the language, ''the same as that of individuals?'' We need not determine whether this language requires that corporate property shall be taxed in the same manner

as that of natural persons. It seems, however, quite
clear that it was intended by this language to require
the Legislature to impose the burdens of taxation upon
the property of corporations for pecuniary profit, the
same as, or equally with that of individuals; that each
shall be taxed for the same objects, and in the same de-
gree, so that individuals shall not be required to pay any
taxes on their property which have not also been as-
sessed and laid upon the property of corporations of
the class named, or in any greater proportion. When
the Legislature provides for taxing the property of in-
dividuals, this clause of the constitution requires it to
tax the property of corporations for pecuniary profit to
the same extent and for the same purposes. If the prop-
erty of the individuals be taxed for state, county, school,
and municipal purposes, the property of this class of
corporations must be subjected to the same taxes, and
at the same rates. The one cannot be exempt, and the
other liable.' ''

It is difficult to understand how this clear opinion,
containing this clear and expressive language, can be
held to support the decision of the majority in the pres-
ent case, or that in the Mississippi Fire Insurance Co.
and other insurance cases. It does not support them.
They express an entirely different language and a dif-
ferent philosophy. However, the Legislature is permit-
ted under section 181 to exercise some discretion in shap-
ing laws for the taxing of insurance companies. It seems
to me that a broader discretion is given the Legislature
in assessing domestic insurance companies than is given
in assessing the other taxes provided for in both this
section and in section 112 which, being provisions in pari
materia, must be construed together, as this court has
held in numerous cases. Section 181 provides: ''And
domestic insurance companies shall not be required to
pay a greater tax in the aggregate than is required to
be paid by foreign insurance companies doing business

in this state, except to the extent of the excess of their ad valorem tax over the privilege tax imposed upon such foreign companies.'' The particular method of reaching the result here sought, and carrying out the policy here announced as to insurance companies, gives the Legislature, I think, a much more comprehensive discretion. Certainly something is left to the legislative discretion in such matters to bring about the result determined for in this provision. I therefore do not think that the insurance cases are authority to support the exemption claimed in the statute before us. When you take section 112, section 181, and section 182 together, they speak a policy of equality of taxation, and name the exceptions to that policy that may be recognized or brought into play by the Legislature. These sections might be read as one section, although they are placed in different chapters of the constitution, and might be read in such way as to constitute one continuous unbroken provision. So read the section would be as follows: ''Taxation shall be uniform and equal throughout the state. Property shall be taxed in proportion to its value. The Legislature may, however, impose a tax per capita upon such domestic animals as from their nature and habits are destructive of other property. Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value. The property of all private corporations for pecuniary gain shall be taxed in the same way and to the same extent as the property of individuals, but the Legislature may provide for the taxation of banks and banking capital, by taxing the shares according to the value thereof (augmented by the accumulations, surplus, and unpaid dividends), exclusive of real estate, which shall be taxed as other real estate. But the Legislature may provide for a special mode of valuation and assessment for railroads, and railroad and other corporate property, or for particular species of property belonging to persons, cor-

porations, or associations not situated wholly in one county. But all such property shall be assessed at its true value, and no county shall be denied the right to levy county and special taxes upon such assessment as in other cases of property situated and assessed in the county. And domestic insurance companies shall not be required to pay a greater tax in the aggregate than is required to be paid by foreign insurance companies doing business in this state except to the extent of the excess of their ad valorem tax over the privilege tax imposed upon such foreign companies; and the Legislature may impose privilege taxes on building and loan associations in lieu of all other taxes except on their real estate. Exemptions from taxation to which corporations are legally entitled at the adoption of this constitution, shall remain in full force and effect for the time of such exemption as expressed in their respective charters, or by general laws, unless sooner repealed by the Legislature. The power to tax corporations and their property shall never be surrendered or abridged by any contract or grant to which the state or any political subdivision thereof may be a party, except that the Legislature may grant exemption from taxation in the encouragement of manufactures and other new enterprises of public utility extending for a period not exceeding five years, the time of such exemptions to commence from date of charter, if to a corporation; and if to an individual enterprise, then from the commencement of work; but when the Legislature grants such exemptions for a period of five years or less, it shall be done by general laws, which shall distinctly enumerate the classes of manufactures and other new enterprises of public utility entitled to such exemptions, and shall prescribe the mode and manner in which the right to such exemptions shall be determined.'' Thus read and construed together it will be seen that the convention contemplated only the grant of an exemption to certain properties in aid of such

utilities as are named in the section, and that was the extent that exemption from taxation should be made, so as to give a corporation an exemption that an individual did not have. The exceptions quoted in these sections of the Constitution are under all proper rules of construction, the only ones that are to have exemption, and the method of special assessment is the only one to be allowed where they are specific, and the only kind that is contemplated under general law is a scheme for assessing a railroad and other property that is not situated wholly in one county, but it was distinctly stipulated that, if these special modes were adopted, the property should be assessed at its true value.

After the decisions in the Adams v. R. R., and Adams v. Bank, above referred to, the court held in the case of Adams v. Bank of Oxford, 78 Miss. 532, 29 So. 402, that the exemptions which had been recognized under prior decisions and which the people had acted upon would not be given a retroactive effect, that is, the decision in the case of Adams v. Bank, and Adams v. R. R. Co., would not be given an effect prior to the date of their rendition on the principle that a rule of property had come into play. In touching upon this subject in Adams v. Bank, 78 Miss. 536, 29 So. 402, the court said: ''The conclusion of the court announced in these cases was accepted and uniformly acted upon prior to the adoption of the constitution of 1890. It was with the light of the judicial interpretation announced in these cases before it that the constitutional convention of 1890 adopted section 112, which provides that property shall be assessed for taxes at its true value. Construing this in some respects new section of our organic law, this court, in the case of Adams v. Bank, supra, declared that the act of the legislature of 1894 was void; but where, in matters of statutory construction, rights have been vested in transactions under the law, as settled by former decisions of this court, they will not be dis-

turbed by departing from such decisions, except in case of clear necessity and positive conviction of error, or where the decisions contravene some fundamental rule of public policy."

In the case of Adams v. Tombigee Mills, 78 Miss. 676, 29 So. 470, 471, the court held that the Act of 1882, c. 49, p. 84, granting an exemption from taxation, was continued in force subject to the legislative repeal by section 181 of the Constitution of 1890. In that case the court reaffirmed the principles announced in Adams v. R. R. Co., supra, using language, in part, in that regard as follows: "It is further clear that the constitutionality, under the constitution of 1869, of a legislative grant of exemption to private corporations for pecuniary profit, if it embraced all of the same class, —the property of individuals being at the same time taxed,—was not argued, considered, or decided in Mississippi Mills v. Cook, but was conceded by the attorney general and the judges who wrote the majority opinions. One of the vices of the decision in Mississippi Mills v. Cook, is that it did not hold that all property of such corporations was required to be taxed, by the terms of the constitution (sections 13, 20, art. 12), just as and when the property of individuals was."

In Thompson v. McLeod, 112 Miss. 383, 73 So. 193, L. R. A. 1918C, 893, Ann. Cas. 1918A, 674, it was again held that, under section 112 of the Constitution, requiring that taxation shall be equal and uniform throughout the state and property shall be taxed in proportion to its value, chapter 110, Laws of 1912, levying a tax in a different manner from that provided in the Constitution upon the property, was unconstitutional and void.

In Chicago, R. I & P. R. Co. v. Robertson, State Revenue Agent, 122 Miss. 417, 84 So. 499, the court held that under section 112 of the Constitution taxation shall be equal and uniform, and that property shall be assessed for taxes according to its true value, and the section can

be complied with only by taxing all property at the same rate on its true value, and the Legislature is without power to provide for the taxation of property by any other method, and consequently chapter 113, Laws of 1912, which provided for a fixed charge on the gross receipts in lieu of all taxes on the property of the company used in its business was void. At page 422 of the Mississippi Report, page 450 of 84 So., the chief justice, speaking for the court, said: "In order that the equality of the taxation contemplated by this section may exist, not only must all property be assessed at its true value, no substitute therefor being permissible (Thompson v. Kreutzer, 112 Miss. 165, 72 So. 891), but there must be no discrimination in rates between different species of property. All property must be taxed at the same rate on its true value. Neither of these requirements are here present, for gross earnings from the cars sought to be taxed are substituted for their true value, and the rate of taxation, three per cent, is different from that imposed on other property; the rate on other property for the year 1912 being six mills on the dollar. Chapter 87, Laws of 1912." He also said (page 423 of 122 Miss. 84 So. 449, 451): " 'Property must be assessed at its "true value". This must be done in order to prevent unjust discrimination by selecting different modes of valuation, as had occurred under the Constitution of 1869. The Constitution of 1890 manifestly intended that stocks, bonds, and all other property should be assessed at what it was really worth, and not valued by any arbitrary rule; no discretion, as to valuation, being left to the Legislature, as the courts had held was done by section 20, art. 12, of the Constitution of 1869.' " In that opinion the case of Cudahy Packing Company v. Stovall, 112 Miss. 106, 72 So. 870, which had held to the contrary, was overruled. This opinion was rendered by the court en banc, with Judge STEVENS dissenting.

It is difficult to see any substantial difference in permitting banks to be assessed on sixty-five per cent of the value of their property and taxed at the same rate, and being assessed on the full value of the property equally with the other taxpayers and paying a different rate of taxation. Things equal to each other are equal, and that is what was involved in Adams v. Bank, 75 Miss. 701, 23 So. 395, supra, in which the Legislature, by a law, undertook to provide that all banks should be assessed at a not greater rate for municipal taxation than the rate for state ad valorem taxes, whereas other property was assessed at a higher rate on their assessed value of property.

I do not think that section 182 of the Constitution is violated by the statute passed, as that applies only to the properties named in the section. I think, however, the statute violates section 87 of the Constitution in the provision that prohibits the Legislature from suspending a general law for the benefit of individuals or private corporations. The case of Y. & M. V. R. Co. v. Southern R. Co., 83 Miss. 746, 36 So. 74, distinctly held that the Legislature was without power under any conditions to suspend a general law for the benefit of individuals and private corporations. Section 87 of the Constitution reads as follows: "No special or local law shall be enacted for the benefit of individuals or corporations, in cases which are or can be provided for by general law, or where the relief sought can be given by any court of this state; nor shall the operation of any general law be suspended by the legislature for the benefit of any individual or private corporation or association, and in all cases where a general law can be made applicable, and would be advantageous, no special law shall be enacted."

It is true that in this case the statute suspending the general law was a local or private statute. There have been intimations that the same end could be accomplished

by a general statute. If the object to be attained is to suspend a general law for the benefit of a special person or a special class, it would be illegal and unconstitutional, because the constitutional provision was not intended to be limited to one person or one corporation, but was to prevent the general suspension of a law that would benefit only private persons or private corporations. See the following cases upon the subject: State v. M., J. & K. C. Ry. Co., 86 Miss. 172, 38 So. 732, 122 Am. St. Rep. 277; Same case, second appeal, 89 Miss. 725, 41 So. 259, 122 Am. St. Rep. 295; Beauvoir Club v. State, 148 Ala. 643, 42 So. 1040, 121 Am. St. Rep. 82; Morgan v. Reed, 39 Tenn. (2 Head.) 276; Woodward v. Brien, 82 Tenn. (14 Lea) 520; Nichols v. Walter, 37 Minn. 264, 33 N. W. 800; Murray v. Board of Com'rs of Ramsey County, 81 Minn. 359, 84 N. W. 103, 51 L. R. A. 828, 83 Am. St. Rep. 379; Jackson County v. State, 155 Ind. 604, 58 N. E. 1037; Richardson v. Board, 72 Kan. 629, 84 Pac. 538.

The statute here involved, chapter 22, Laws of 1930, suspends two general laws, to-wit, the guaranty provision of the banking laws, under which all depositors had a right to participate in the guaranty funds collected under that statute, while if suspended, and under the new act, the participation is limited to those who had claims or guaranteed certificates issued prior to the passage of the act. Under the provisions of the act this suspension would necessarily last longer than sixteen years. During this period depositors in banks subsequent to the passage of the act would get none of the benefits of the guaranty depositor's law, but all of the benefits from that fund thereby supplemented and collected and augmented during the sixteen years would go to a number of persons or corporations, which cannot be enlarged. In other words, it is equivalent to naming the specific persons now holding such depositors' certificates as the beneficiaries of the suspended law. As stated in Toombs

v. Sharkey, supra, the court will look through the form to the substance of things, and so looking it is manifest that suspension as to the depositors' guaranty law is for the benefit of a specially designated number of people. Therefore it is not a general law, but in effect a special law intended to benefit special persons only. In the second aspect, the said chapter 22, Laws of 1930, suspends the general taxing laws of the state as to the surplus of such banks as are chartered by the state. It does not apply in favor of all banks having deposits; it cannot apply to national banks. The result is that the exemption from taxation goes to a special class of persons and not to all engaged in the same line of business, and under the same circumstances. The general public, of course, have to bear the burden of taxation which is lifted from a special class by the act, and this gives to that special class an exemption from taxation that is not accorded to other banks doing a similar business.

It is true that the act undertakes to give the national banks the opportunity of coming under the law and thereby getting the benefit of the exemption, but it is well known that national banks cannot come under the provisions of the law, and that the state has no jurisdiction over them to control their surplus or to require them to create one, or to liquidate the banks for a failure to comply with the provisions of the statute. The national banks are not subject to taxation in any different way, or at least to any different extent, than state banks, and the law would either be void or the national banks would be exempt without compliance with the act. The provision would certainly be ineffective if it affected national banks. Again there would be discriminations between the state banks and national banks in that a statute could not require national banks to pass one-half of their profits to the surplus fund and could not limit the investments of their funds in a business transaction

that might be most profitable to them. In other words, national banks would not be required to buy bonds and other low interest bearing securities and hold them, but having a greater freedom of business could earn profits on the part of their effects called surplus and increased dividends, and would have a greater capacity than state banks to make loans to persons desiring to obtain them. When a state bank under this law acquires a surplus ·equal to one hundred per cent of its capital stock, it would have to buy low interest bearing securities and could not loan that much of its capital or property to individuals.

It clearly appears, therefore, that the act violates section 87 and probably the equality clause of the Federal Constitution, but, as the majority opinion has not discussed that provision, although it was raised, I do not discuss it.

As to the challenge that the act violates section 61, I only desire to say that the decisions under this section are, to my mind, so conflicting that it is difficult to tell what the law is upon that subject and whether the section has not been practically eradicated by construction.