MISSISSIPPI POWER & LIGHT Co. *v.* LOVE *et al.*

(In Banc. Nov. 11, 1946.)

[27 So. (2d) 850. No. 36366.]

Jackson & Young, Joe H. Daniel and Milton H. Mitchell, all of Jackson, for appellant.

678

680

Satterfield, Ewing & Hedgepeth, of Jackson, Heidelberg & Roberts, of Hattiesburg, and Greek L. Rice, Attorney General, by Wm. B. Fontaine, Assistant Attorney General, for appellees.

684

**Griffith, J.**, delivered the opinion of the court.

Appellant is the owner of considerable property subject to ad valorem taxation in this State. It filed its taxpayer's bill against the chancery clerk of Yazoo County, seeking to enjoin the enforcement of an Act of the Legislature known as House Bill 868, passed at the regular session in 1946. This Act, as its main feature, exempts from taxation ''all non-producing leasehold interests upon all oil, gas and other minerals in, or under lands lying within the state . . . created or assigned after the effective date of this act, and also all non-producing interests in such oil, gas and other minerals (including royalty interests therein) hereafter conveyed to a grantee or purchaser or excepted or reserved to a grantor separately and apart from the surface . . .''

The Act further provided that all such transfers or reservations must have attached to the instrument evidencing the transaction, certain documentary stamps in the sum of from three to eight cents per acre according to the length of the term of the lease or reservation.

And as to leases and reservations already in existence, it was enacted that they also should be exempt, provided the owner or owners thereof within a specified period made application therefor to the chancery clerk of the county wherein the particular lands were situated, the application to have affixed documentary stamps in the same amount as had the application been a lease or reservation.

Appellant's chief contention is that the Act in question is not a real exemption statute, but is an attempt in the guise of exemption to substitute a document tax in lieu of the ad valorem tax in contravention of Section 112, Const. 1890, and contrary to the holding of this Court in such cases as Chicago, R. I. & P. R. Co. v. Robertson,

122 Miss. 417, 84 So. 449. And appellant contends further that even if intended as an exemption statute, it is invalid because there is no reasonable basis upon which it can stand. There are other subsidiary contentions.

There was a general demurrer to the bill which was sustained, and the complainant having declined to plead further the bill was dismissed. The allegations of the bill are such that it may be gathered therefrom that approximately two-thirds of the lands of the state are not at present under oil and gas or other mineral leases. The Act recites on its face that among its objects is to encourage the purchases of such leases in this State.

It is firmly settled by our decisions that Section 112, Const. 1890, does not prohibit exemptions from ad valorem taxation when there underlies the exercise of the power some principle of public policy that can support a presumption that the public interest will be subserved by the exemption granted and when the classification of the property exempted is based on some reasonable ground and some real difference which bears a just and proper relation to the object sought to be accomplished. City of Jackson v. Mississippi Fire Ins. Co., 132 Miss. 415, 95 So. 845; Miller v. Lamar Life Ins. Co., 158 Miss. 753, 131 So. 282; City of Jackson v. Deposit Guaranty Bank & Trust Co., 160 Miss. 752, 133 So. 195. If this were not true, our homestead exemption statute could not be upheld or the statutes exempting all livestock; and there are several others.

The object sought to be accomplished here has been stated, and it would seem to follow as well within the bounds of reason that to exempt subsequently acquired leases from ad valorem taxation would encourage the investment of capital in them, and as such nonproducing leases do not at all interfere with the ordinary uses of the land, therein is a real difference as compared with other estates in the land,—not to mention other differences. This would leave only the question whether it would be in the interest of the general welfare of the

state that investments in such leases should be encouraged even if at the expense of the ad valorem taxes thereon, and conceding for the purposes of this case that this broad matter of policy is not solely for the final determination of the legislature itself, we must conclude that at least it is a matter wherein the affirmative may be asserted with some real reason, and this is enough to place it beyond the domain of judicial interference.

As to existing leases, they could be brought under the exemption by transfer, and it might be to the public interest that many of them should be transferred to more active owners; but aside from this, it was doubtless considered by the legislature as a requirement of justice and equality that inasmuch as subsequently acquired leases would be exempt, existing leases should be permitted to be exempt also, and it cannot be said to have been wholly unreasonable and arbitrary to consider that the advantage of the exemption of subsequently acquired leases was of an importance sufficient to take along with it the exemption also of the existing leases.

It follows from what has been said that it was within the legislative province and power to exempt both the existing and the subsequently acquired leases from ad valorem taxes, and had that been all that the legislature did there would remain no further question. Appellant says, however, that the additional or further provisions as regards the document stamp tax make the entire act invalid, because, as appellant asserts, the exemption features would not have been enacted except for the document stamp tax feature.

The legislature itself has declared otherwise, for by Section 10 of the Act it is recited as follows: "If for any reason, any section, paragraph, provision, clause or part of this act shall be held unconstitutional, or invalid, that fact shall not affect or destroy any other section, paragraph, provision, clause or part of this act not in and of itself invalid, but the remaining portion thereof shall be in force without regard to that so invalidated." The

exemption features, under this Section 10, may stand even though other provisions should be rejected. See American Express Co. v. Beer, 107 Miss. 528, 65 So. 575, L. R. A. 1919B, 446, Ann. Cas. 1916D, 127.

And thus we are relieved of pursuing the further questions presented, and particularly whether the documentary stamp tax is within the Constitution, and this for the reason, none other being necessary, that even if those provisions are unconstitutional, as to which we intimate no conclusion, they do not adversely affect the appellant who is not shown to be a leaseholder. This Court is definitely committed to the proposition that no person may complain of an unconstitutional enactment unless he is harmed thereby in some substantial way. Dunn v. Love, 172 Miss. 342, 359, 155 So. 331, 92 A. L. R. 1323, affirmed under case title Doty v. Love, 295 U. S. 64, 55 S. Ct. 558, 79 L. Ed. 1303, 96 A. L. R. 1438.

Affirmed.

**Sydney Smith, C. J.**, did not participate in this decision.

DISSENTING OPINION.

**Roberds, J.**, delivered a dissenting opinion.

Before the adoption of the Constitution of 1890 the Legislature possessed broad and extensive powers in adopting schemes for taxing property and exempting it from taxes. For instance, it enacted a statute authorizing the City of Aberdeen to assess lots within the municipality ". . . to any amount that they deem proper and necessary for the purpose of making improvements on the streets in front of said lot or lots." This Court upheld that exercise of power. Smith v. Aberdeen Corp., 25 Miss. 458, 459. It was but natural with such far-reaching powers that many discriminations and injustices crept into the statutes. It was to limit that power and to prevent such injustices that Section 112 of the Constitution of 1890 was adopted. City of Jackson v. Deposit Guaranty Bank & Trust Co., 160 Miss. 752, 133 So. 195.

That Section requires taxation to be uniform and equal throughout the State and property to be taxed in proportion to its true value. That the Act under consideration (Chapter 409, General Laws 1946) does not comply with these requirements can be demonstrated, I think, by a simple example: John Doe owns 200 acres of land. The ad valorem tax thereon amounts to $80 per year. Richard Roe and others own the minerals under the land, a 20 year oil and gas lease and the royalty rights thereon. No oil is being produced on the land, but it is sufficiently near oil producing lands to make the value of the minerals and royalty rights equal to the value of the surface, which we know, from common knowledge and cases coming to this Court, is a fact in many, many instances. Richard Roe and others pay a total tax of $16 on their property. They pay that only once and that is all they ever pay so far as this Act is concerned. During the 20 years John Doe pays a total of $1,600 taxes, not counting annual interest on his money. I have used an example where the respective values are equal. Hundreds of examples might be used where the value of the mineral and royalty rights is several times that of the value of the surface. The extent of the injustice simply depends upon the comparative values. The injustice exists in every case. There is neither uniformity nor equality nor justice in this tax and the mineral and royalty interests are not taxed in proportion to their value.

Section 9770, Code of 1942, provides: "Whenever any . . . mineral, gas, oil, timber or similar interests in real estate, . . . are owned separately and apart from and independently of the rights and interests owned in the surface of such real estate, or when any person reserves any right or interest, or has any leasehold in the elements above enumerated, all of such interests shall be assessed and taxed separately from such surface rights and interest in said real estate, and shall be sold for taxes in the same manner and with the same effect as other interests in real estate are sold for taxes."

Now let's reverse the situation: The Act calls the tax on the mineral conveyance a documentary or transfer tax. There is no such tax on the deed conveying the land. The leasehold owner must pay $16 to get this lease recorded, whereas the owner of the land will pay for this service only the regular fees of the clerk for recording the deed, usually between one and two dollars. It is true that question is not involved in this case, because it is not shown that appellant owns a lease and is offering to record it, but the principle is involved, although the discrimination in this instance involves a much lesser amount than does the first illustration. Both illustrations show the injustice and lack of uniformity in the statute.

But it is said the legislature has the power to classify property and exempt that classification from taxation under certain conditions. That is true, but such exemption cannot violate the uniformity, equality and true-value provisions of the Constitution. The exemption must not be arbitrary, nor for the benefit of one individual or group of individuals, but there must underlie its exercise some justifiable benefit to the general public at large, and be based upon reasonable grounds bearing a just, proper and a rational relation to the promotion of the public welfare. The grant of an exemption rests upon the assumption that it will serve a public policy and benefit the body of the people, and not upon the idea of lessening the burdens of the individual owners of property. This Act undertakes to justify itself by enumerating therein the reasons and objects for its adoption.

The first stated object is to encourage the purchase of oil and mineral leases. It may well be doubted whether this is such a general public benefit as justifies a tax exemption. It deals purely with private property. It involves no proper general public policy, like, for instance, the ownership of homes, with the security, means of support, promotion of family life and good citizenship, resulting from such ownership.

Again, it is the prospect of discovery of oil and not the exemption of the lease from taxation which accelerates the purchase of oil leases.

The second stated object is to encourage the drilling for and production of minerals in this State. Oil, gas and other minerals are natural resources. It may well, be doubted whether it is for the permanent public benefit to quickly deplete these natural resources. At least, such depletion is not in its nature the kind of public benefit which justifies the exemption of property from taxation. But aside from that idea, it cannot be said with any semblance of reason that exempting the leases and mineral rights from taxes will stimulate quick production and exhaustion of these resources. The natural result of such exemption is to delay operations. If it costs the owner nothing to retain the leases, that is certainly not a reason to hurriedly extinguish his right. The reason would defeat the object.

The third stated object is to relieve county officials of the "onerous" duty of collecting the tax. This, to say the least, is a novel public benefit. Carried to its logical conclusion it becomes absurd. If county or state officials are seen working after office hours, or they appear weary from much work, the solution is to pass an act abolishing a part of their duties, or, to have a perfect law, abolish the duties entirely and thereby bring about an ideal situation under which the county officials receive pay but do no work whatever. This may be a humane object, but it can hardly be said to be in its nature the kind of general public benefit which justifies a tax exemption. Besides, the compensation of the tax collector depends upon the amount of taxes he collects, and I have heard of no demand by these officials that a statute be enacted reducing their compensation.

Summed up: This law abitrarily exempts from taxation millions of dollars of property and throws that tax burden on other property owners without serving any proper

public policy or interest. It is not uniform, it is not equal, and the classified property is not only not assessed at its true value but it is not assessed at all. In my opinion, it is unconstitutional and should be so declared.