448 So.2d 917 (1984)
BOARD OF SUPERVISORS OF LAMAR COUNTY
v.
HATTIESBURG COCA-COLA BOTTLING COMPANY.
No. 54412.
Supreme Court of Mississippi.
January 18, 1984.
*918 William E. Andrews, III, Barbara Bond Parker, Temple, Hudson, Jordan & Gamble, Purvis, for appellant.
R.W. Heidelberg, J. Thomas Dale, Heidelberg, Sutherland & McKenzie, Hattiesburg, for appellee.
En Banc.

ON PETITION FOR REHEARING
BROOM, Presiding Justice, for the Court:
Tax exempt status of property of a corporation, Hattiesburg Coca-Cola Bottling Co., (Coca-Cola herein), and the constitutionality of the claimed exemption is chief issue here. Mississippi Code Annotated §§ 27-31-1, 57-3-33 and 57-1-47 (1972); Article 7, § 182 Mississippi Constitution (1890). The lower court, the Circuit Court of Lamar County, upheld Coca-Cola's claim of tax exemption[1] and on appeal here the Supreme Court reversed and remanded for further proceedings. We now withdraw our former opinion and affirm (with modification) the lower court judgment which ruled that Coca-Cola was entitled to the tax exemption.
Pertinent facts were stipulated in the lower court. In the record are several documents which the parties agreed were relevant to the issues. On November 20, 1978, Coca-Cola and appellant Lamar County (County) entered into a "memorandum of agreement", providing for issuance by the County of industrial revenue bonds as authorized by Title 57, Chapter 3, Mississippi Code Annotated (1972) to provide funds for Coca-Cola to build a bottling plant (the project) in Lamar County. Coca-Cola was responsible for acquiring the property, building and equipping the plant and conveying it to the County. Lamar County was then to lease the project back to Coca-Cola for rent sufficient to pay the principal, interest, and redemption premium on the bonds. The rent was to be the sole source of revenue from which to pay the bonds. Also, the agreement provided that Coca-Cola would have the option to purchase the project for an amount sufficient to retire the bonds plus a "nominal amount."
Pursuant to the agreement, Coca-Cola obtained real property on which to locate the project and conveyed it by warranty deed to Lamar County who then leased it back to Coca-Cola. The lease agreement, dated June 1, 1979, provided that Coca-Cola was required to maintain and repair the project, purchase insurance, and to pay all "lawful" taxes. Lamar County covenanted not to sell, convey, or assign its interest in the project without Coca-Cola's approval. Also, the County covenanted that it would not take any affirmative action which would cause or induce the assessment of ad valorem taxes on the project. The lease further provided that its primary term would expire in 1999 but may be extended or renewed. No issue is presented as to whether the proper administrative steps were taken in order for the exemption to have the approval of any appropriate state agency, board or administrative tribunal.
*919 Lamar County's tax rolls had listed the project as exempt but at its November 2, 1981 meeting, the County's Board of Supervisors adopted a resolution which found that the property was subject to assessment and authorized the County Tax Assessor to change the land assessment rolls to reflect that the project was not exempt. Coca-Cola filed an objection with the Board of Supervisors which was overruled. Then Coca-Cola appealed to the circuit court, which reversed the Board and held that under the lease and Mississippi Code Annotated §§ 27-31-1 and 57-3-33 (1972) the project was exempt from ad valorem taxation.
Presented by this appeal is one central issue: Was the project exempt from ad valorem taxation? As revealed by the circuit judge's opinion, three possible sources allow such exemption.
Enacted by the Mississippi Legislature in the 1930's, the State's Balance Agriculture with Industry statutes, §§ 57-1-1 et seq. and the State's Agriculture and Industry statutes, 57-3-1 et seq., were enacted to achieve the declared public policy and for public purposes of promoting and developing commercial, industrial, agricultural and manufacturing enterprises.[2] As enacted in 1960, the A. & I. legislation authorizes counties and municipalities to issue general obligation bonds and lease the enterprises to business entities. Issuance of Revenue Bonds are within the purview of §§ 57-3-1 et seq., supra.
Previously we have upheld the industrial development programs premised upon the legislatively declared public policy and purposes provided by statutes. Albritton v. City of Winona, 181 Miss. 75, 178 So. 799, 115 A.L.R. 1436 (1938) stated that the method adopted by the legislature has a reasonable relation to the purpose sought to be accomplished and, the end being public, that it is attained through a private channel matters not:
The end being legitimate [here, the relief of unemployment and the promotion of the state's agricultural and industrial welfare], the means is for the legislature to choose ...
Manufacturing enterprises, as all will agree, will tend to relieve unemployment and both directly and indirectly furnish markets for agricultural and other products. This state, in comparison with others, has few such enterprises, and it has long sought in vain to procure them by offering them special inducements, e.g., exemption from taxations. The Legislature has determined that the public interest, as set forth in the preamble to the statute, requires the adoption of another method for procuring them, to-wit, municipal ownership in whole or in part thereof. The method thus adopted undoubtedly has a reasonable relation to the purpose sought to be accomplished... .
Id. at 99, 178 So. at 804-05. (Emphasis added). The statutory industrial development programs contemplate that the proposed industry shall be operated to accomplish these purposes and the lease agreement be so designed:
The lease, therefore, must be of such character as will insure the continued operation of the proposed industry with power in the municipality, under the supervision and control of the Mississippi Industrial Commission, to enforce the continued operation; in other words, the character of the lease is to be such as, in effect, to constitute the lessee the municipality's agent for operating the industry without liability on the municipality to others growing thereout. "If the end be public, it matters not that it is attained through a private channel."
181 Miss. at 106, 178 So. at 807 (Emphasis added).
Similar interpretations were enunciated in Craig v. North Mississippi Community *920 Hospital, 206 Miss. 11, 39 So.2d 523 (1949), Mississippi Milk Commission v. Vance, 240 Miss. 814, 129 So.2d 642 (1961), and In Re Validation of $15,000,000 Hospital Revenue Bonds (Methodist Hospital Project), etc., 361 So.2d 44 (Miss. 1978).
Examination of the industrial enterprise agreements in this case, together with the lease agreement, shows that they were clearly executed to accomplish the public policy A. & I. purposes stated in the act, they were authorized by law, and are in all respects valid and binding upon the parties. We find that the entire project, including land, buildings, improvements, machinery, equipment and the lease agreement was, subject to the limitation of Article 7, § 182 of the Mississippi Constitution of 1890, expressly exempt from ad valorem taxation by the industrial development statutes for the statutory ten (10) year period. § 57-3-33, supra provides as follows:
§ 57-3-33. Exemption from taxation.
The bonds authorized by this chapter, and the income therefrom, all mortgages or deeds of trust executed as security therefor, all lease or purchase agreements made pursuant to the provisions hereof, all purchases required to establish the industrial enterprise and financed by bond proceeds shall likewise be exempt from all taxation in the State of Mississippi except the contractors' tax ... and all projects and the revenue derived therefrom from any lease thereof shall be exempt from all taxation in the State of Mississippi. ... (Emphasis added.)
According to § 57-3-33 "all lease ... agreements" and "all projects" shall be exempt from "all taxation" in the State of Mississippi, except "contractors' tax." As used in the legislation, § 57-3-5(2) defines "Project" to mean:
... land, buildings, improvements, fixtures, machinery, equipment and furnishings, and all real and personal properties deemed necessary in connection therewith, or any part or combination of parts of the foregoing, whether or not now in existence, which shall be suitable for use by any of the following or by any combination thereof:
(a) Any industrial enterprise for the manufacturing, processing, or assembling of any products of agriculture, mining or industry; ...
Therefore, the enunciated A. & I. public policy and legislative intent is to exempt from ad valorem taxes all land, buildings, improvements, machinery, equipment and all real and personal property deemed necessary in connection with the project, together with all lease agreements thereon. Provided in § 57-3-33, the exemption could hardly be clearer and thus Lamar County, having signed the contract and agreed to the exemption, cannot now be permitted to assess ad valorem taxes on property contained in the Coca-Cola project within the ten years allowed by § 182, Mississippi Constitution of 1890, except for fraud or other statutory grounds.
If the purpose of § 57-3-33 is merely to insure that the governmental entity which issues revenue bonds to finance a project will not be taxed, the statute would be totally unnecessary because § 27-31-1(b) already exempted property of the State of Mississippi and its political subdivisions. Thus, county and municipally owned property was already exempt from ad valorem taxes, and the Legislature obviously intended by § 57-3-33 to provide for an additional exemption not already allowed by § 27-31-1(b). By exempting the bonds authorized by the act and the income therefrom, the legislature must have intended to benefit the bond holders, not the county. In exempting all lease agreements it clearly intended to exempt the industry who would operate the project under a lease agreement, and by exempting "all projects", as defined in § 57-3-5(2), we think the legislature intended to provide that every interest in the real and personal property deemed "necessary in connection" with the project be exempted. The county already being exempted, the legislature must have intended that the industry likewise would be exempt.
*921 Recent enactments of the legislature indicate that the law makers did and still intend that § 57-3-33 provide tax exemption for the industry. In this regard, our sales tax laws were amended in 1978 and again in 1983 so as to group several types of exemptions of the sales tax laws into industrial exemptions, agricultural exemptions, governmental exemptions, etc. Mississippi Code Annotated § 27-65-101 (Supp. 1983) dealing with industrial exemptions includes this significant reference to § 57-3-33:
"No industrial exemption as now provided by any other section except section 57-3-33 shall be valid against the tax herein levied... ." (Emphasis added).
Thus, the legislature acknowledged that an "industrial exemption" was provided by § 57-3-33 which continues in effect.
Perusal of pertinent statutes shows that the legislature has expressed a clear intent to grant tax exemptions for the projects, including lease agreements and leasehold interests of the industry, where title to the property remains in the municipality, i.e., § 57-1-47 (BAWI projects), § 57-3-33 (industrial revenue bond projects) and § 49-17-119 (pollution control projects). Conversely, when the legislature has elected not to grant tax exemptions, because the property is owned by the industry, the legislature has expressly so stated, i.e., § 57-41-13 (industrial loan and note programs).
Power to grant tax exemption (not exceeding constitutional limits) is vested within the discretion of the legislature, but such exemption shall not be arbitrary and must bear some just and rational relation to public interests. City of Jackson v. Deposit Guaranty Bank & Trust Company, 160 Miss. 752, 767, 133 So. 195, 198 (1931) states:
The power of the Legislature to exempt from taxation is no longer an open question in this state. Through a long course of judicial decision and legislative action it has become firmly settled that the power of exemption is within the legislative discretion, subject only to the limitation that the exemption shall not be arbitrary; that is to say, it must have some just and rational relation to the promotion of the public welfare.
On this point, Miller v. Lamar Life Insurance Company, 158 Miss. 753, 131 So. 282 (1930); City of Jackson v. Mississippi Fire Insurance Company, 132 Miss. 415, 95 So. 845 (1923); and Harrison County v. Gulf Coast Military Academy, 126 Miss. 729, 89 So. 617 (1921), are similar.
The industrial revenue bond chapter, of which § 57-3-33 is an integral part, provides "this chapter shall be liberally construed" in conformity with its intent. § 57-3-33. Wisdom or desirability of legislated tax exemptions are not matters for judicial determination.
Mississippi Code Annotated §§ 57-1-47 and 57-3-33 (1972), expressly grant tax exemptions as inducements to new or expanded industries as a part of the state's economic and industrial development programs. § 57-1-47, a part of the original BAWI Act, declares all enterprises under the provisions of that chapter to be "public property" and accordingly not subject to taxation within the ten years allowed under § 182 of the Constitution, supra. § 57-3-33, a part of the industrial revenue bond chapter, provides that all lease agreements and all projects thereunder shall be exempt from all taxation. §§ 57-1-47 and 57-3-33 both provide ad valorem tax exemptions to those industries establishing enterprises within the purview of those industrial development chapters. These are examples of the "special inducements, e.g., exemption from taxation" mentioned in Albritton v. City of Winona, supra, offered as a part of the economic and industrial programs of the state.
Article 7, § 182, of the Mississippi Constitution of 1890 in pertinent part states:
Section 182. The power to tax corporations and their property shall never be surrendered or abridged by any contract or grant to which the state or any political subdivision thereof may be a party, except that the Legislature may grant exemption from taxation in the encouragement *922 of manufactures (sic) and other new enterprises of public utility extending for a period of not exceeding ten (10) years on each such enterprise hereafter constructed... .
Action by the state or a political subdivision calculated to permanently surrender or abridge the power to tax corporations and their property is obviously precluded by the black letter language of § 182 of the Mississippi Constitution. It follows that a permanent tax exemption would not be permitted by the first clause, but the second clause of § 182 allows a ten (10) year exemption from taxation in the encouragement of manufacturers and other new enterprises. Consequently, under § 57-3-33, supra, Coca-Cola may have an exemption for a "period not to exceed ten (10) years" from date of completion of the project.
City of Jackson v. Mississippi Fire Insurance Company, 132 Miss. 415, 95 So. 845 (1923), spoke to this issue. There this Court held that an exemption extended to Mississippi insurance companies amounted to a failure to exercise the power to tax and not a surrender of that power. However, the Court stated there that,
In determining the validity of an exemption from taxation claimed by a corporation, two questions can arise under this section [§ 182]. (1) Is the exemption within the provision thereof for `the encouragement of manufacturers and other new enterprises of public utility?' And (2) if it is not within that provision, does the statute granting the exemption surrender or abridge the power of the State to tax corporations and their property?
Id. at 423, 95 So. at 848-849 (emphasis added). In Mississippi Fire Insurance Company, supra, the Court answered in the negative the first question and proceeded to the second. Here, however, the first question must undoubtedly be answered in the affirmative, leaving no need to continue to the second. In such a case, the constitution speaks unequivocally: "The Legislature may grant exemption from taxation in the encouragement of manufacturers ... extending for a period not exceeding ten (10) years... ." Giving to these words their plain meaning, as we must under Ex parte Dennis, 334 So.2d 369 (Miss. 1976), it is quite evident that the exemption afforded by § 57-3-33 must be limited to ten years.
§ 57-3-9, with Mississippi A. & I. Board approval, fully authorized Lamar County "To lease ... [the project] for such rentals and upon such terms and conditions as the governing body may deem advisable and as shall not be in conflict with the provisions of this chapter." § 57-3-33 expressly exempts the project from taxation, and § 27-31-1(b) delineates the basic exemption of property owned by the State of Mississippi and its political subdivisions. The lease agreement between Lamar County and Coca-Cola contained express provisions designed to ensure that the real and personal property comprising the project shall be fully exempt from all ad valorem taxes and contained express covenants taken by the county designed to accomplish that result. Section 6.02 of the lease agreement [Lamar County is designated "the issuer" therein] provided:
Nothing contained in this Section shall be construed to mean that any property, real or personal, included within the project and owned by the issuer shall be subject to ad valorem taxation by Lamar County, Mississippi, the issuer or any other political subdivision of the State of Mississippi.
The issuer agrees to cooperate in securing any tax exemption to which either it or the company may be or may become entitled under the laws of the State of Mississippi or the United States and relating to the project. The issuer covenants that it will not take any affirmative action which may reasonably be construed as tending to cause or induce the levy or assessment of ad valorem taxes on the project and that it will take any lawful, affirmative action, upon the reasonable request of the company, in order to prevent the levy *923 of ad valorem taxes on the project. The issuer and the company agree to cooperate and use their best efforts to secure and retain all such applicable exemptions from ad valorem taxation. (Emphasis added).
The entire industrial enterprise was authorized by law and the statute expressly authorized Lamar County to lease the project to Coca-Cola upon the stated terms and conditions, and the cited statutes expressly provided for ad valorem tax exemptions.[3] Covenants set forth in the lease agreement designed to ensure that all real and personal property comprising the project will be fully exempt were authorized by law and are fully valid and binding. Levy of the ad valorem assessment by the Board of Supervisors in violation of the express terms of the lease cannot be upheld. We must conclude that the lower court correctly held that the assessment was erroneous and in violation of the lease contract. However, § 182 of the Constitution, supra, leaves the legislature and the courts without power to grant exemptions beyond the ten year limitation or similar exemptions for "expansions" of the particular project.
By grant of the tax exemption pursuant to the express language of § 57-3-33, an integral and important part of the industrial revenue bond chapter under which the enterprise was established, the legislature allowed execution of the lease. The lease contract recognized this exemption and Lamar County bound itself not to take any affirmative action which would cause assessment of ad valorem taxes on the project.
§§ 57-3-33, 57-1-47, 27-31-101 when construed cumulatively, as we must, allow the ad valorem tax exemption in this case upon the record and stipulations.
Accordingly, the petition for rehearing is granted, our former opinion is withdrawn, and we now affirm the lower court's judgment which upheld the exemption in favor of Hattiesburg Coca-Cola Bottling Company, except the judgment is modified to the extent that the exemption shall not exceed the ten year limitation of § 182, Mississippi Constitution of 1890, supra.
AFFIRMED AS MODIFIED.
PATTERSON, C.J., WALKER, P.J., and ROY NOBLE LEE and PRATHER, JJ., concur.
DAN M. LEE, J., concurs.
HAWKINS, BOWLING and ROBERTSON, JJ., concur in part and dissent in part.
DAN M. LEE, Justice, concurring:
I concur in the withdrawal of our previous opinion and in both the logic and result of today's decision; however, I feel compelled to add a brief comment. In this Court's original opinion in this cause, we remanded the matter for a determination of whether Coca-Cola was entitled to an exemption from ad valorem taxation under Mississippi Code Annotated § 27-31-101 (Supp. 1983). That result obviously did not achieve the finality of today's opinion. Because appellant was granted an exemption at the time of the completion of this new industry in 1979 it is not necessary to remand for further proof. Quite clearly today's decision is a victory for judicial economy; but more importantly, it creates a result whereby both sides may accomplish their legitimate purposes. I also concur in the excellent analysis of the proper procedure to be used by a new industry to properly obtain a tax exemption in this state by Justice Hawkins.
This Court would be under no strain to take judicial notice of the value to the State and its citizenry of programs promoting industrial growth. Continued development of Mississippi's potential as a home for business and industry is vital to our economic well-being. Obviously a favorable tax scheme is conducive to economic development. *924 Nonetheless, both constitutional and practical considerations require that the tax scheme not be so lopsided as to relieve industry from its fair share of the tax burden. The ten-year limitation imposed on industrial tax exemptions by Section 182 of our State Constitution is designed to insure that industry shoulder its share of the tax burden once the state has been generous in helping the business get established.
Because I believe that today's decision correctly balances the interests of the state and industry, I concur in the withdrawal of our previous decision and the rendering of today's.
HAWKINS, Justice, concurring in part and dissenting in part:
Every member of this Court is vitally interested in the healthy economic development of our entire State. We are all aware of the struggle, especially in small towns, to secure manufacturing plants. If this Court could simply issue a mandate which would secure economic prosperity for the citizens of Mississippi, I am certain that there would be no dissents. But, we neither grant nor remove tax exemptions. This authority is vested solely in the Legislature under our Constitution. Our role is to determine the legislative intent and constitutionality of acts passed by the Legislature, and if we interpret a statute contrary to the intent or will of the Legislature, that body has the absolute authority to change the statute to suit its will. Thus it is with statutes dealing with taxing and financing manufacturing plants.
Let us put this matter in perspective. There have been basically two methods under our State laws whereby the state by public policy has endeavored to encourage industrial development. First, the Constitution of 1890, § 182, authorized the Legislature to grant exemption from taxation in the encouragement of manufacturers and other new enterprises of public utility for a period not to exceed five years. This section was amended in 1961 to increase the authority to ten years. Second, during the years of the Great Depression, the Legislature inaugurated the Balance Agriculture With Industry program whereby county or municipal bonds were authorized to construct manufacturing plants for industries, new or old. See: Miss. Code Ann. 57-1-29; 57-3-19. While both of these inducements to encourage industrial expansion have been widely used by our towns and counties, they are separate and distinct. The trouble with this case and the majority's opinion is that the distinction between the two has been ignored.
Addressing first the matter of granting ad valorem tax exemption, § 182 of the Constitution states:
The power to tax corporations and their property shall never be surrendered or abridged by an contract or grant to which the state or any political subdivision thereof may be a party, except that the Legislature may grant exemption from taxation in the encouragement of manufactures and other new enterprises of public utility extending for a period of not exceeding ten (10) years on each such enterprise hereafter constructed, and may grant exemptions not exceeding ten (10) years on each addition thereto or expansion thereof, and may grant exemptions not exceeding ten (10) years on future additions to or expansions of existing manufactures and other enterprises of public utility. The time of each exemption shall commence from the date of completion of the new enterprise, and from the date of completion of each addition or expansion, for which an exemption is granted. When the Legislature grants such exemptions for a period of ten (10) years or less, it shall be done by general laws, which shall distinctly enumerate the classes of manufactures and other new enterprises of public utility, entitled to such exemptions, and shall prescribe the mode and manner in which the right to such exemptions shall be determined.
Beginning in 1922 (Chapter 139, Mississippi Laws 1922), the Legislature has from time-to-time availed itself of the authority *925 granted by § 182 by distinctly enumerating the types of manufacturers and new enterprises whose properties, with certain exceptions, counties and municipalities have discretionary authority to grant exemptions from ad valorem taxation. See Miss. Code Ann. § 27-31-101. This section authorizes the maximum period of ten (10) years tax exemption.
Section 27-31-107 of the Mississippi Code Annotated sets forth the procedure by which a tax exemption is applied for and granted. Any person, firm or corporation desiring exemptions from municipal and county ad valorem taxation must make sworn application to the governing authorities of each, and set forth certain specified information.
The governing authorities of the county and city have authority to approve all or part of such application. The application and approval are then sent to the Mississippi Agricultural and Industrial Board to determine if the property is eligible for exemption, and certify whether it is or is not. If the property is eligible for tax exemption, it is discretionary with the local board whether the exemption is granted or not.
Addressing the matter of proposed industrial revenue bond issues, they likewise require approval by the Mississippi Agricultural and Industrial Board. These bonds may be issued by a county or by a municipality. Regardless of which political unit is issuing the bonds, the contract is entered into between the local political subdivision and the industry, subject to approval by the Agricultural and Industrial Board. That contract governs the issuances of the bonds, ownership of the property paid for by the bonds, lease of the property, rental, and incidentals of such a lease contract. A contract of this nature was entered into by the parties in the instant case.
Of course, since title to the property paid for by these bonds is vested in a political subdivision of the State, the property is not subject to ad valorem taxation by the county, city or state. It is pertinent at this point to note there has been a widespread, if not universal, practice in this State for the county and city not to tax even the leasehold interest which an industry owns in the property.
This is the nub of the problem in this case. The Court has correctly held, however, that the leasehold interest is taxable, and that § 182 of the Constitution prohibits any exemption beyond ten (10) years. Thus, under the majority holding, Hattiesburg Coca-Cola Bottling Company would, at most, be entitled to a tax exemption not exceeding ten (10) years on its leasehold interest. I concur that this is the constitutional limitation.
I also think, however, that in order for the Hattiesburg Coca-Cola Bottling Company to receive a tax exemption of the leasehold interest, it is required to make application to the county and City of Hattiesburg (if the property is located within the corporate limits of the city and the company desires such municipal tax exemption) as required by § 27-31-107 of the Mississippi Code Annotated. Because I believe that this is the proper (legislatively and constitutionally mandated) method by which an industry is granted an exemption from taxation, I dissent from the majority's holding that § 57-3-33 of the Mississippi Code Annotated provides an automatic exemption to any industry funded under industrial revenue bonds.
It is my belief that § 57-3-33 applies only to the fee and not the leasehold interest in the property. I reach this conclusion for two reasons: First, the wording of § 57-3-33 is consistent with this interpretation. The purpose of § 57-3-33 is to insure that the municipality which issues revenue bonds to finance a project will not be taxed. Because ownership of the project must remain in the municipality, § 57-3-33 prevents the municipality from being taxed as the owner of the fee. The reference to "revenue derived therefrom from any lease thereof" is directed solely to the rent paid by a lessee manufacturer to a lessor municipality.
The second reason I would hold the exemption is § 57-3-33 does not apply to a lessee's leasehold interest is because it *926 clearly does not comport with our State's constitutional requirements. As noted above, § 182 of the Mississippi Constitution requires that "When the Legislature grants such exemptions for a period of ten (10) years or less, it shall be done by general laws, which shall distinctly enumerate the classes of manufacturers and other new enterprises of public utility entitled to such exemptions. ..." [Emphasis added]. Even a superficial reading of § 57-3-33 reveals that it makes no effort to distinctly enumerate the classes of manufacturers entitled to this supposed exemption it grants. Therefore, the majority's opinion has the odd effect of giving § 57-3-33 an unconstitutional interpretation.
The Legislature has done all that is necessary to comply with § 182 of the Constitution through the passage of § 27-31-101, Miss. Code Ann. (Supp. 1983). In my opinion that code section is the sole source of exemption from ad valorem taxation for new and expanded factories and enterprises. Indeed, that section is the only one which meets the requirements of § 182. Therefore, the only logical conclusion is that the Legislature did not intend for § 57-3-33 to comply with § 182. The reason the Legislature did not so intend is because § 57-3-33 has nothing to do with granting an ad valorem tax exemption to property owned by new factories and enterprises. Again, § 57-3-33 is intended solely to prevent a political subdivision from being taxed on property owned by it for a nongovernmental purpose.
Our original holding in this case was correct, in my opinion. We simply held that a leasehold interest owned by an industry in facilities bought and paid for under an industrial bond issue is subject to county and municipal ad valorem taxation. We also held that this leasehold interest may be exempted by law for a period not to exceed ten (10) years if it qualifies under § 182 and Miss. Code Ann. 27-31-101.
If that opinion were to be modified at all, I would simply add my further view that Lamar County, by its contract, duly approved by the A & I Board, has covenanted with Coca-Cola to cooperate with this corporation in securing any tax exemption which it may be entitled to under the law. Thus, by virtue of its covenant, the county is obligated to grant Hattiesburg Coca-Cola Bottling Company every exemption which the county is by law authorized to grant under § 27-31-101, and would not be permitted to deny any tax exemption which it has discretionary authority to grant the enterprise under § 27-31-101. If the company meets the requirements of § 27-31-101, the county under its contract would be obligated to approve an application for a tax exemption of the leasehold interest owned by the company for a period not to exceed ten (10) years.
This view is implicit in the original opinion.
Aside from my law practice, the better part of all my outside activities for the past 35 years has been and remains to do all I can to help my home town survive. No one has to convince me of the need for industrial development, or that the problem grows more acutely difficult. I also know numerous factors are taken into consideration before any industry either locates in a town, or expands its enterprise there. Educational facilities, natural resources, transportation and business opportunity are but a few of the important ones.
I do not share the alarm that simply asking an industry, following a period of several years tax exemption, to pay some local tax on its leasehold interest should put any dampening effect on industrial development.
In any event, the Legislature can take all appropriate steps to remedy any shortcomings of this nature in order to make this state competitive in our quest for industrial development.
If a case of this nature can focus our attention on what the people of Mississippi do need to do in order to promote economic development for ourselves and posterity, it will have served a salutary purpose.
BOWLING and ROBERTSON, JJ., join in this opinion.
NOTES
[1] No limit was placed on the exemption as to time and no expiration date of the exemption was fixed.
[2] The program, Balance Agriculture with Industry (BAWI), was first extensively promoted during the administration of the late Governor Hugh L. White as a means to helping the State's economy recover from the ravages wrought by the 1930's "great depression". The Agriculture and Industry (A. & I.) program was promulgated during the 1960's.
[3] In the record is a letter opinion of the Mississippi Attorney General's office advising the Lamar County Board of Supervisors' attorney that the "leasehold interest is not subject to ad valorem tax by the county." The opinion cites §§ 57-3-33 and 27-31-1, supra.